**ALBERT ex rel. BUICE v. PATTERSON et al.**

No. 4132.

Circuit Court of Appeals, First Circuit.

May 20, 1946.

Alfred A. Albert, of Boston, Mass., and Hayden C. Covington, of Brooklyn, N. Y., for appellant.

Thomas P. O'Connor, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., of counsel), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from an order of the District Court of the United States for the District of Massachusetts dismissing a petition for a writ of habeas corpus.

In the petition it is alleged that the person in whose behalf it is brought, Joe Welden Buice, is being held in custody as a person subject to military jurisdiction by the named respondent, an officer of the United States Army, and his subordinates. The ground asserted for issuance of the writ is that Buice was never requested to take the oath of induction into the Army of the United States, that he refused to take that oath, and that it was never administered to him, so that as a result his status never changed from that of a civilian to that of a soldier, and in consequence the military authorities have no jurisdiction over him under the rule of Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

Before considering the merits of this contention, however, we feel it in order to comment upon the procedure adopted below. Upon the filing of the petition in the District Court that court issued a summons to show cause, if any there was, why the writ asked for should not issue. This summons was duly served but at the time and place specified therein for return, counsel for the respondents instead of filing a written return, appeared before the court bringing Buice with them. Thereupon Buice was put upon the witness stand by his own counsel and in response to their questions testified on the merits. Counsel for the respondents, apparently not objecting, cross-examined Buice but put in no evidence of their own, and thereafter, the petitioner submitting no further evidence, the court made the finding which will be considered hereafter.

The practice of issuing orders to show cause for the purpose of determining in doubtful cases whether the allegations in a petition for a writ of habeas corpus raise substantial issues of fact has long had the approval of the Supreme Court. Ex parte Yarbrough, 110 U.S. 651, 653, 4 S.Ct. 152, 28 L.Ed. 274; Walker v. Johnston, 312 U.S. 275, 283, 284, 61 S.Ct. 574, 85 L.Ed. 830. But to hold a hearing on the merits—on the legality of the detention complained of—on the return of such an order instead of after the writ itself has issued and return thereon has been made, is unusual. We are not prepared to sanction such procedure in all cases. It may well be that under some circumstances a premature hearing on the merits would operate to the material prejudice of an applicant for the writ. No such situation, however, is presented here.

The petitioner in the case at bar has been represented by competent counsel throughout these entire proceedings and furthermore his counsel appear to have been the ones who initiated the procedure adopted in the court below. At any rate they made no objection to it there, nor indeed do they make any objection to it here. In fact for all that appears, they may have hoped to gain some advantage from a hearing on the merits at an earlier stage in the proceedings than usual for the reason that the respondents were not then prepared to offer their proofs. But, however this may be, the petitioner has had a hearing in person before the court below as the law requires, (Walker v. Johnston, 312 U.S. 275, 284, 286, 61 S.Ct. 574, 85 L.Ed. 830) and in addition he has had precisely the hearing his counsel wished. Under the circumstances here disclosed possibly counsel for the respondents could have made a valid objection, but in the absence of objection by counsel for the petitioner, we see no reason why the latter should be given another opportunity to litigate the merits. We proceed, therefore, to consider the facts.

Buice testified that by occupation he is an ordained minister of the sect known as Jehovah's Witnesses and that he was born in that faith. In 1942 he registered with his local draft board and it classified him 1-A. Upon appeal that classification was sustained and on November 22, 1942, in response to notice, he reported for induction. At the induction station he went through a physical examination in the course of which he says he told the "heart doctor"

that he would refuse to take the oath of induction and refuse to serve in the Army because he was one of Jehovah's Witnesses and had been refused classification as a minister of religion. Upon completion of the physical examination he was found physically and mentally acceptable for military service.

The narrative statement of his testimony then continues as follows: "When called upon to enter the room with other men to take the oath he went up to a desk and spoke to a non-commissioned officer, told him his name and said that he was going to refuse to take the oath. The non-commissioned officer said that they had been looking for him. They told him that there was nothing they could do and that whether or not he took the oath he was still in the Army. The oath was administered to the group, but though he was in the same room he stood aside from the rest of the group. After the others were sworn in he was told to go home and to come back on December 2, 1942, otherwise he would be held for desertion." He says that the oath of induction was neither administered to him nor was he asked to take it.

On December 2, 1942, he returned to the induction station as ordered. At that time he says that he told the officer in charge that he had not taken the oath of induction and was not subject to military jurisdiction but the officer replied that nevertheless he was in the Army. Thereupon he was assigned to a company where he says he was not asked to do anything.

He testified that he consistently refused to salute his superior officers; that he signed no papers with respect to allotment of his pay; and that he refused to work in any capacity whatever. He admitted, however, that he signed papers waiving insurance, and that he signed for and was issued a uniform. It does not appear that he ever accepted any pay.

After a week at the induction station he said he was ordered to another military post but refused to go. For this he was court-martialed and sentenced to six months. Upon his release he was returned to the company to which he had formerly been assigned, but each day he says that he went to a nearby town where he did ministerial work. He says that no action was ever taken against him for thus absenting himself.

Later he was transported bodily to another military post, (he refused to go there upon orders) but upon arrival there he walked off the post and went to Cleburne, Texas, where he remained for a year engaged in the work of his sect and wearing civilian clothing. Then he went to Tennessee where he continued his religious work until June, 1945, when he was arrested by agents of the Federal Bureau of Investigation. The latter turned him over to the appropriate military authorities and they took him to Camp Edwards in the District of Massachusetts where he is now held. It appears that while at this latter post he went through an infiltration course involving military tactics and the use of firearms without making any objection.[1]

On the above testimony the District Court dismissed the petition saying "The petitioner's story, coming at this late date and unsupported by other evidence, is not sufficient to warrant a finding that he was never inducted into the military service."

■ The first question for our consideration is the meaning of this statement. Counsel for the appellant construe it to be a ruling that as a matter of law Buice's delay in instituting the present proceedings constituted a waiver of his right to challenge the jurisdiction of the military authorities over him by writ of habeas corpus. We do not agree. Instead it seems to us too clear for argument that the statement indicates that the court below found Buice's uncorroborated testimony, in view of his delay in petitioning for a writ of habeas corpus, insufficient to sustain the burden resting upon him to make it appear somewhat more probable than otherwise that he had never been formally inducted into the military service.

[1] It is stated in the petitioner's brief that after the hearing in the court below Buice was tried for desertion by general court martial, and upon conviction sentenced to serve five years at hard labor in a military prison.

Thus we come to the question of the weight to be accorded on appeal to findings of fact made by a district court in habeas corpus proceedings. The petitioner contends that we should give such findings no weight whatever, but instead should proceed to make our own independent findings of fact from the record. Possibly some decisions prior to 1938 sanction this practice in appellate proceedings in habeas corpus. In re Neagle, 135 U.S. 1, 42, 10 S.Ct. 658, 34 L.Ed. 55; see also United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 402, 55 S.Ct. 781, 79 L.Ed. 1501. But, however this may be, the Federal Rules of Civil Procedure are now applicable to habeas corpus proceedings on appeal (Rule 81(a) (2), 28 U.S.C.A. following section 723c), and from this we take it that the above cases are no longer controlling but that now we cannot set aside findings of fact made by a district court in a habeas corpus case unless, giving due regard to the opportunity had by the trial court to judge the credibility of the witnesses, its finding is clearly erroneous. Rule 52(a). It is urged, however, that such is the case here for the reason that Buice's testimony was uncontradicted and neither self-contradictory not inherently incredible. Again we do not agree.

No doubt there may be cases in which it would be clearly erroneous not to believe uncontradicted testimony. But so many factors affect credibility that it is hard to conceive of a situation in which we could say that it was clearly erroneous for a trial court to disbelieve, or find insufficient, oral testimony, even if uncontradicted, given with respect to a basic issue by a party having the burden of persuasion.

We concede that it would be extremely difficult, if not impossible, for Buice to obtain testimony in corroboration of his own. The witnesses to what occurred at the induction station in Texas in November, 1942, are doubtless no longer available to Buice because, even if he could discover their names, they must by this time be widely dispersed in various military units, if still living and not discharged from the Army, and furthermore, after this lapse of time, even if found, they could hardly be expected to have any useful memory of the event to which Buice testified.[2] But even if the inference drawn from Buice's failure to corroborate his testimony is weak, the fact remains that delay in asserting a claim casts doubt upon its validity. Normally rights are asserted promptly, not slept upon, and this is particularly true with respect to the right to be free from illegal physical restraint. However, Buice's delay in asserting his claim can in part be explained by the fact that for a very substantial proportion of the time between his induction and the institution of these proceedings he was not being subjected to any military restraint whatever. Nevertheless he was not free during all that time. He served a sentence of six months for refusal to obey a military order and during that time he did not seek enlargement by habeas corpus.

But counsel for the petitioner counter with the argument that Buice's delay is fully explained by the fact that until March 27, 1944, when Billings v. Truesdell, supra, was decided by the Supreme Court, it was generally held by the lower federal courts that acceptance for service by the military authorities standing alone and without formal induction was sufficient to subject a selectee to military jurisdiction, and thus that Buice reasonably believed that until that date (he was not being subjected to military restraint at that time but was pursuing his ministerial work in Tennessee) a petition for habeas corpus in his behalf would be futile.[3] This argument would have more force if there were evidence in the record from which it could either be found or reasonably inferred that Buice was aware of the legal situation prevailing prior to the decision of the Billings case. As the record stands it does not seem to us that the inference drawn by the court below from Buice's delay in petition-

2 For the same reason the respondents, although they might be able to obtain the names of those present at the time when Buice says he refused to take the oath, would also find it difficult to offer testimony to contradict that offered by Buice.

3 The present petition was filed July 9, 1945, soon after Buice was taken into custody.

ing for habeas corpus is entirely unwarranted.

However, even if we could say that the reasons given by the court below for its finding were wholly inadequate, nevertheless that finding would have to stand.

Nowhere in Chapter 14 of Title 28 of the United States Code Annotated is there any provision requiring findings of fact in habeas corpus proceedings. Section 461 of that chapter only requires that upon issuance of the writ "The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require." And as already appears the Federal Rules of Civil Procedure apply to habeas corpus proceedings only on appeal, so that the part of Rule 52(a) supra, requiring a trial court to make findings of fact and conclusions of law is inapplicable. Thus, even if no finding of fact at all had been made by the court below, we could not set its disposition of the case aside unless we could find no reasonable basis therefor anywhere in the record. We find such basis here.

The court below had an opportunity to judge of Buice's credibility, and it may have thought him unworthy of belief. This alone would warrant the disposition made below. And in addition doubt is cast upon Buice's testimony that he never submitted to actual induction by the fact that after acceptance by the military authorities, and witnessing, at least, the administration of the oath of induction to the others in his group, he reported back to his induction station after furlough according to orders; that he signed for, was issued, and for a time apparently wore a uniform; and that at Camp Edwards after his arrest he made no objection to taking a course in military tactics involving the use of firearms. Possibly his return to the induction station may be explained by his fear that if he did not he would be subject to the extreme penalty imposed upon deserters in time of war, and possibly his wearing a uniform may be explained by the removal of his civilian clothes by the military authorities, but his failure to object to taking the infiltration course remains unexplained and ·

casts substantial doubt upon his testimony that he never submitted to actual induction.

Since we cannot say that there is no basis in the record for the district court's finding that Buice had failed to sustain the burden resting upon him to prove this essential fact by a preponderance of the evidence, (Walker v. Johnston, 312 U. S. 275, 280, 287, 61 S.Ct. 574, 85 L.Ed. 830), it follows that he has shown no right to be discharged from the custody of the military authorities under the rule of Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

The order of the District Court is affirmed.

MAGRUDER, Circuit Judge, concurs in the result.