Elias **BODDIE**, Appellant,

v.

Kermit A. **WEAKLEY** and D. C. Board of Parole, Appellees.

No. 10059.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1965.

Decided Feb. 3, 1966.

J. Jay Corson, IV, Fairfax, Va., court-assigned counsel (Boothe, Dudley, Koontz, Blankingship & Stump, Alexandria, Va., on brief), for appellant.

MacDougal Rice, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BOREMAN, Circuit Judge, and MARTIN, District Judge.

HAYNSWORTH, Chief Judge.

This District of Columbia prisoner now confined in Lorton Reformatory in Virginia attacks the fairness and adequacy of his mandatory release revocation hearing, pursuant to which he was recommitted to Lorton. The District Court dismissed the petition for a writ of habeas corpus, without a hearing, upon findings in accordance with summary statements in an affidavit attached to a return. We think there were factual questions requiring fuller exposition.

Boddie had been released from Lorton on February 24, 1961. The release was mandatory in light of the good time credits he had earned, but he was to remain under the supervision of the District of Columbia Board of Parole until September 29, 1962. On May 18, 1962, a warrant was issued by the Board for his arrest, but it was not executed until June 1, 1964. Under that warrant he was returned to Lorton where he was later called in for a hearing before the Parole Board.

In his petition, Boddie charged that he had requested an attorney to assist him in the revocation hearing and witnesses to testify in his behalf. He amplified the statement of his claim that he had requested a lawyer by alleging that his former employer had promised to procure a lawyer for his assistance and to appear as a witness to his good character.

The District Court required the Parole Board to file a return to the petition. The return incorporated an affidavit, in which it was stated that Boddie had been informed of his right to counsel and to present witnesses, that he had waived such rights and then had been afforded a hearing.

On the basis of the return, the District Court dismissed the petition. It was of the opinion that Boddie did not have a right to appointed counsel and it found, on the basis of the Parole Board's return, that Boddie had waived his right to counsel, as well as his right to present witnesses. It also expressed the view that it had no right to reject the Board's exercise of its discretionary powers of mandatory release revocation.

■■ It is quite true, as the District Court stated, that there is no right of judicial review of a Parole Board's exercise of its discretionary powers. It is also true that we have held that a District of Columbia prisoner is not entitled to the services of appointed coun-

sel in a routine parole revocation hearing.[1] Under § 24–206 of the D.C.Code, however, he has a statutory right to the assistance of retained counsel, and there is a judicially enforceable right to fundamental fairness. The right to fairness includes the right to present the testimony of voluntary witnesses.[2]

■ A colorable claim of a deprivation of those rights is justiciable.[3] That it is, is implicit in Jones v. Rivers, 4 Cir., 338 F.2d 862. Otherwise, we could never have met on its merits the claim of right to appointed counsel. Indeed, Judge Boreman explicitly stated that the right of fair and honest treatment at the hands of the Board is subject to judicial review,[4] as had Judge Fahy in the similar case of Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 260.

If a probationer or parolee is entitled to judicial enforcement of such rights, certainly one released mandatorily is. He is not at large by the grace of the Board, and judicial enforcement of his rights in a revocation hearing would have no tendency to affect adversely a liberal functioning of the parole system.[5] One released because the statute requires it, cannot be arbitrarily recommitted by a Parole Board, and, if he is, he has a judicial remedy.

■ We do not now suggest that a revocation hearing for one who was released mandatorily by force of the statute must incorporate adversary procedures inappropriate to a parole revocation hearing. Responsively to the suggestion that the controversy is not justiciable, we hold only that a claim, not patently frivolous, that one released mandatorily has been arbitrarily recommitted, is justiciable. When properly presented, such a claim requires judicial inquiry as to the fairness of the recommitment proceedings.

■ Here, the petitioner's allegations of a deprivation of his right to present witnesses constituted a valid claim for appropriate relief. So did his claim of a deprivation of a right of counsel, for it was coupled with an allegation that, with the assistance of his former employer, he might have obtained the services of a lawyer had the Board given him the opportunity.

■ The Board's return did not furnish a basis of dismissal. In conclusionary language, it alleged that Boddie had waived his rights to counsel and to witnesses. While under the oath of an administrative employee of the Board, the return could serve no other office than the framing of the factual issues, for the claim of waiver was, otherwise, wholly unsubstantiated. It was not supported by a transcript of the proceedings or by any concession of the petitioner. Under such circumstances, the Board's general, unsubstantiated assertion that it had treated the petitioner fairly could not obviate the necessity of a hearing on the petitioner's sworn allegations that it had not.[6]

1. Gaskins v. Kennedy, 4 Cir., 350 F.2d 311; Jones v. Rivers, 4 Cir., 338 F.2d 862. See also Hyser v. Reed, 115 U.S. App.D.C. 254, 318 F.2d 225.

2. Barnes v. Reed, 112 U.S.App.D.C. 192, 301 F.2d 516; Reed v. Butterworth, 111 U.S.App.D.C. 365, 297 F.2d 776; Robbins v. Reed, 106 U.S.App.D.C. 51, 269 F.2d 242.

3. Hurley v. Reed, 110 U.S.App.D.C. 32, 288 F.2d 844; and see Glenn v. Reed, 110 U.S.App.D.C. 85, 289 F.2d 462; Fleming v. Tate, 81 U.S.App.D.C. 205, 156 F. 2d 848, and the cases cited in note 2, supra.

4. 338 F.2d at 874. Review is obtainable in a habeas corpus proceeding or in an action for a declaratory judgment in the sentencing court. Hurley v. Reed, 110 U.S.App.D.C. 32, 288 F.2d 844.

5. Judge Wright, in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 261, expressed the fear that requiring a parole revocation hearing to be conducted as an adversary judicial proceeding would make parole boards more reluctant to release prisoners on parole. His concern is not unfounded.

6. Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Reickauer v.

If Rule 56(e) of the F.R.Civ.P. is not made inapplicable to habeas corpus proceedings in the District Courts by Rule 81(a)(2),[7] it would not affect the result. Rule 56(e) of the F.R.Civ.P., as amended in 1963, deprives a party opposing a motion for summary judgment of the right to stand upon the general allegations of an opposing affidavit. The rule would have been appropriately applied here, if a transcript of the revocation hearing had been appended to the Board's return or extracts from it incorporated in its supporting affidavit. As it was, the affidavit disclosed no specific facts supporting or amplifying its general allegations that the prisoner had waived his rights and had received fair treatment. Under those circumstances, this unlearned, uncounseled prisoner should not suffer a procedural default because the more specific allegations of his complaint were not reiterated in an answering affidavit.

The transcript of the revocation hearing, produced in this Court for the first time, eliminates the necessity for a remand, however, for it clearly shows there was no fundamental unfairness in the revocation hearing and confirms the Board's allegations of waiver. Obviously, if the transcript had been before the District Court, it would have dismissed the petition, and dismissal would have been proper. Since we now make the transcript a part of the record, a remand would be fruitless.

The fact that Boddie did not know, in advance of the hearing, with what violations he was charged[8] would give us great concern were it not for the combination of two circumstances. In the first place, after the charges were explained to him, he was clearly told that if he wished a lawyer or witnesses, the hearing would be postponed to permit him to obtain them. Boddie then explicitly stated that he wished to proceed with the hearing and that he waived his rights to counsel and to witnesses. In the second place, there was no critical factual dispute and no other element of unfairness.

Boddie had been conditionally released in February, 1961. Thereafter he worked in a succession of jobs as a janitor or building maintenance engineer. He was having relations with two women, however, and that kept him in difficulty.

In December, 1961, he forfeited bond on a disorderly conduct charge.

He purchased a second hand automobile, though one of the conditions of his release was that he not drive one. He was instructed by his parole officer to sell it, which he did, but then he acquired another, and, in April, 1962, forfeited $25 bond for having altered its

Cunningham, 4 Cir., 299 F.2d 170; United States, ex rel. McGrath v. LaVallee, 2 Cir., 319 F.2d 308.

7. Rule 81(a)(2) makes the rules inapplicable to habeas corpus proceedings in the District Courts except to the extent the practice is not controlled by statute and previously conformed to the practice in actions at law or suits in equity. We need not decide whether this renders Rule 56(e) inapplicable here, since our ultimate conclusion would be the same in any event and the application of Rule 81(a)(2) is not free from doubt. See Sokol, Federal Habeas Corpus 94–96 (1965). See also United States ex rel. Seals v. Wiman, 5 Cir., 304 F.2d 53, 64; Bowdidge v. Lehman, 6 Cir., 252 F.2d 366, 368; Hunter v. Thomas, 10 Cir., 173 F.2d 810, 812; Albert ex rel. Buice v. Patterson, 1 Cir., 155 F.2d 429, 433;

Lyles v. Beto, S.D.Tex., 32 F.R.D. 248; cf., Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392; Ruby v. United States, 9 Cir., 341 F.2d 585, 587; United States ex rel. Goldsby v. Harpole, 5 Cir., 249 F.2d 417; United States ex rel. Jelic v. District Director, 2 Cir., 106 F.2d 14, 20.

8. The warrant under which Boddie had been arrested charged him with unspecified violations of the conditions of his good time release. It does not affirmatively appear that Boddie had any information in advance of the hearing, itself, about the specific subjects of inquiry. The transcript of the revocation hearing indicates that when asked if he had any witnesses he wished to present, he responded, "Well, I don't know what the charges are."

license plates. Boddie claimed that one of his girl friends was the only one who had driven these two vehicles.

In May, 1962 Boddie assaulted one of his girl friends, and broke her leg. It was then that the warrant issued. Boddie admitted that, at the time of the assault, he knew it was a violation of the conditions of his release. He conceded that he had violated them.

In May, 1962, he stopped reporting to his parole officer. The frequency of his reporting had been increased as the misdemeanors were disclosed, the ownership of the first car became known, and various difficulties with each of the two girls were reported. Boddie's explanation was that on his last visit with his parole officer, he was told he need not again report until he received a "report" addressed to him at his mother's address. No such "report" was received, he said, so he made no effort to contact the parole officer, indeed could not be located by parole officials for two years.

It is evident that the members of the Board disbelieved Boddie's explanation of his failure to maintain contact with his parole officer. Substantial doubt of it is certainly engendered by the fact that loss of contact closely followed Boddie's assault upon the girl and her injury, coupled with Boddie's ready admission that in May, 1962 he knew there were three more months in the period of supervision and that, because of his earlier difficulties, the requirement that he report to his parole officer had been successively increased from once each month to twice each month to once each week.

■ If the reason for his loss of contact with his parole officer be thought a factual issue, however, it was not a critical one. The warrant had issued in May, 1962 when the extent, if not the fact, of the reporting default was unknown. Clearly it issued because the injury of the girl was thought a critical violation when viewed as the culmination of a course of conduct which had been fraught with minor difficulties including two bond forfeitures on minor misdemeanor charges. Since Boddie readily admitted everything with which he could have been charged when the warrant issued, any factual question arising out of his explanation of his subsequent loss of contact with the Board could hardly be regarded as crucial. To the extent it may have influenced the Board's decision, it was not the kind of issue with respect to which he was greatly disadvantaged by the absence of the assistance of a lawyer. This we conclude all the more readily in light of Boddie's explicit waiver of a right to counsel after he had been told that the Board would inquire about his failure to cooperate with his parole officer.[9]

While we think the petition was improperly dismissed on the record as it then was, the addition in this Court of the transcript of the revocation hearing conclusively shows that Boddie had a fair hearing and was deprived of no constitutional right. For that reason, dismissal of the petition is affirmed.

Affirmed.

9. Insofar as lack of cooperation was one of the charges, it appears to have related to the acquisition of the second automobile after having been told by the parole officer to dispose of the first. That was one of the events which was known at the time the warrant issued.

At the hearing, however, there was a discussion of the loss of contact matter after the statement of the charges and before Boddie's waiver of counsel. When the waiver was made, he was fully aware of the scope of the inquiry.