Robert J. SCARPA, Petitioner-Appellant,

v.

U. S. BOARD OF PAROLE, Walter Dunbar, Chairman, et al., Respondents-Appellees.

No. 71–1602.

United States Court of Appeals,
Fifth Circuit.

May 12, 1972.

Rehearing En Banc Granted
June 28, 1972.

**32**

Hughes Spalding Craft, Atlanta, Ga., for petitioner-appellant.

John W. Stokes, Jr., U. S. Atty., Richard H. Still, Jr., Asst. U. S. Atty., Atlanta, Ga., for respondents-appellees.

ON PETITION FOR REHEARING

Before TUTTLE, GEWIN and GOLDBERG, Circuit Judges.

TUTTLE, Circuit Judge:

When this case was reached on the calendar for oral argument, a misunderstanding between appointed counsel and the appellant Scarpa caused the court to dismiss the appeal on the ground of mootness. Upon subsequent representations by the appellant, and with the cooperation of counsel, it has now been made to appear that the appellant did have a substantial issue to be presented to this court on appeal which was not mooted by any action that had occurred since his original filing of his complaint in the district court.[1]

Because of the misunderstanding, and because the court considers that the contentions of the appellant are such as warrant a consideration of the appeal on its merits, we waive the time limitations for filing petition for rehearing, under the circumstances, and proceed to consider the appeal.

The court's order of December 7, 1971, 453 F.2d 891, is hereby set aside.

Essentially, the appellant is here complaining of the fact that, although he was sentenced upon his plea of guilty to one charge of forging a signature on a United States Bond, under the provisions of U.S.C.A. 18 § 4208(a) (2), he has not been afforded the rights which are implicit in the sentencing under this section of the Criminal Code.[1A]

1. This court, in its previous opinion, stated:

"We do not reach the merits of this appeal. In June, 1971, appellant appeared before the parole board for a second hearing. Although the hearing records were not made available to this court, *the parties*, having examined them, have agreed in open court that appellant was accorded full and fair consideration by the parole board at this second hearing. Therefore, any injury caused by the alleged deficiencies in appellant's initial hearing has been cured. Since the issues raised on this appeal are now moot, the action is *Dismissed*." (Emphasis added).

The true facts now appear to be that Scarpa has at *no time* been given an opportunity to examine the records of June, 1971 hearing. He strongly challenges our acceptance of the statement of counsel appointed by the court (and not at his request) that "the *parties* have agreed that Scarpa was accorded full and fair consideration by the parole board at this second hearing." One of his contentions has, at all times, been that he has been denied any access to or view of the board's records.

Counsel now agrees that his consent was made without full consideration of all of Scarpa's contentions. Significantly, also, the United States has filed no motion of mootness in the case, and has not submitted to the court any of the "hearing records," upon which this court could give any effect to such second hearing.

1A "This section, so far as applicable here, provides as follows:

"(a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may . . .

(2) . . . fix the maximum sentence of imprisonment to be served in

It is appellant's contention that this statute, which was passed in 1959, was remedial in nature, to the extent that it modified, in a manner favorable to persons sentenced under it, the provisions of U.S.C.A. 18 § 4202, which restricts the power of the Board of Parole to a release on parole only after serving one-third of the sentence of the court.

The specific complaint made by the appellant was sought to be made by the filing of a suit for declaratory judgment in the district court. It will be noted that he did not file a Petition for Habeas Corpus seeking release or contending that he was entitled to parole. He sought, rather, to assert that under the court's sentence, in keeping with the intent and purpose of the statute, he was entitled to be considered by the Board of Parole for parole eligibility and that, *when so considered,* the Board could not act in a manner that was completely lacking in basic concepts of due process. This, he alleged, the Board had done on the occasion of its first consideration of his request for his parole, and will continue to do whenever it may hereafter consider his case.

■ As we have stated, Scarpa recognizes that no one is automatically entitled to parole. He knows that the grant or denial of parole is "discretionary." The applicable statute provides that if there is a "reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole." 18 U.S.C.A. § 4203.

What this complainant asks this court to do is to hold that the rubric "discretionary act" does not insulate the one exercising discretion from responding when it is charged that it has abused its discretion. He says that there is no

greater immunization of the parole board's abuses of discretion, if they exist, than there is of a court's abuse of discretion. The reviewing of alleged abuses of the discretion of a trial court are a part of the regular grist to our mill as an appellate court.

■ We have before us purely a legal question, because, having alleged a state of facts which he relied on to entitle him to relief, he was met only with a motion to dismiss for failure to allege facts on which relief could be granted. The trial court granted the government's motion, but in doing so, undertook to make partial findings quite contrary to those alleged, but without any evidence or even denial entered by the government. Of course, such a motion, much like the general demurrer of bygone days, must rest on the proposition that if everything adequately pleaded as fact in the complaint is taken as true, no cause of action has been set out.

What are the facts alleged by Scarpa in his complaint? For this inquiry, of course, we must look to his complaint as amended, and must ignore the elaborate allegations made by him in the "brief" filed by him *pro se* in this court.

Scarpa was sentenced on June 13, 1968, following a plea of guilty, to a term of imprisonment of eight years under the provisions of 18 U.S.C.A. § 4208(a) (2), and he was later incarcerated at the United States Penitentiary in Atlanta. Having made application for parole, the plaintiff appeared before the parole board commissioner on the 13th day of October, 1969. He then alleges the following facts relating to the nature of the proceedings that followed:

"It is a matter of record (See: Parole Boards minutes and records utilized for said hearing, a copy of which is not attached hereto because of plaintiff's inability to acquire possession of same due to parole board

which event the court may specify that the prisoner *may become eligible for parole at such time as the board of*

*parole may determine."* (Emphasis added.)

rules.) that the consideration afforded the plaintiff for possible release on parole was predicated *solely* upon plaintiff's past criminal record. (Emphasis in original).

"Plaintiff was told at said hearing that he (the Parole Commissioner) after having read plaintiffs criminal record, was of the opinion that plaintiff was not ready for parole status in view of his (plaintiffs) past criminal record.

"Thereafter plaintiff received further formal denial of parole with a set off date to June 1971 as plaintiffs next scheduled hearing for reconsideration only.

"Thereafter plaintiff re-petitioned the defendant parole board for re-consideration as to his possible release on parole, presenting therein the same reasons that presently are argued herein.

"Plaintiff was thereafter notified by Parole Executive James R. Pace, that plaintiff's application for re-consideration had been denied. Which therefore had concluded exhaustion of plaintiffs Administrative remedies."

After then outlining his contention that as a matter of law the defendants were mandated "to give plaintiff a fair, full and just hearing; and that they have violated rights to due process," Scarpa outlined what he called "the procedure adopted by the defendants of the United States Penitentiary, Atlanta, Georgia, pertaining to parole hearings on a prisoner committed under 18 U.S.C.A. § 4208(A) (2):"

"The inmate is informed by his caseworker that he (the inmate) will be appearing before the defendants shortly and can there appear in person or waive such hearing if he so desires. (Plaintiff in the instant case did not waive.) If the inmate is of the desire to meet the defendants, he is then sent a form and is told that it is necessary for him to fill out said form with the information therein requested. Amongst the demanded information therein requested is such questions as, Are you guilty of this crime. Explain your part in the commission of this crime? Why do you think you should be released on parole? Where will you live if paroled? With whom will you live? Where will you work if paroled? What type of work will you do if paroled? Then a list of all members of the inmates family who are interested in the inmates possible release on parole is required. Lastly the inmate is required to obtain a person other than a member of his immediate family to act in the capacity of a parole adviser to the inmate when released on parole.

"Thereafter the inmate is called before the board and asked by them the same questions as are set forth in the aforementioned forms and in the case of plaintiff, his name ending in a vowel and being of Italian descent two other questions familiar to all other inmates whose names end similarly, are asked: Are you an Italian? Do you belong to organized crime?

"The defendants herein have nothing before them at the time of said hearing other than (a) the standard F.B.I. Report utilized by the sentence court to impose sentence in the first instance, which is a criminal history report. (b) The pre-sentence investigation report utilized also by the court in imposing sentence which is also a criminal history report. (c) A record of the inmates arrest sheet, which was also utilized by the court in their imposition of sentence and which is very clearly a criminal history report. The only other informative report before the defendants is a record of any breach of the prison rules committed by the inmate while in prison, of which plaintiff has none."

The appellant further alleged that:

"Prior to meeting the defendants at said hearing plaintiff consulted with

his caseworker, a Mr. Wolfe [2] on the possibility of being recommended and receiving parole. Plaintiff in turn was informed by said caseworker that there was no such possibility, that the purpose of plaintiff meeting the board was 'only a get together meeting whereat the board would then set a date approximately two to three years away where at the later date they would decide the possible release date of the inmate on parole'. Asked why this was so, the caseworker replied "The Board doesn't pay any mind to an "A" number as the Judges are giving out too many of them and they don't mean anything any more.'

"Plaintiff then gave said caseworker the name and address of a person willing to employ plaintiff if paroled and the name and address of a 'Parole Adviser' as was required. The caseworker took said information saying, 'that the board was not interested in that.'

"Plaintiff claims that the defendants herein predicated their denial of parole with nothing more before them except reports from various sources belonging to the Federal Government, *solely* pertaining to the Criminal History of plaintiff,

"And that although plaintiff was made to submit the names and addresses of various members of his family, not a single member of his family was ever interviewed.

"Plaintiff further claims that his potential residence if released on parole was not investigated.

"Nor was the person interviewed who pledged employment to plaintiff.

"Despite the fact that plaintiff was mandated by Rule of the defendants to obtain a person to act in the capacity of 'Parole Adviser' to plaintiff before he (plaintiff) could be considered for parole, and the fact that plaintiff

succeded (sic) in obtaining the pledge of two highly respectable people, husband and wife; these people were never interviewed in any manner or was there even an attempt to interview them.

"Also the defendants herein neither sent for nor requested plaintiffs records from New York Sing Sing Prison where plaintiff had been incarcerated under a State Rehabilitation Program and from which he had been paroled from but due to the Federal detainer lodged against him for the service of his present Federal sentence, plaintiff was turned over to the custody of the United States Marshalls for commencement of the sentence herein.

"It is therefore clearly shown that the defendants herein had no knowledge before them or utilized by them as to plaintiffs employment, residence, family ties, Parole advisers and the rehabilitation report from Sing Sing Prison all of which could have aided plaintiff in his application for parole."

Scarpa filed an extensive brief and argument of the facts and law with his complaint. He denominated the complaint as an effort to obtain a declaratory judgment, but also requested that it be treated as a petition for mandamus if that method of proceeding should be found to be appropriate.

The United States, on behalf of the parole board, filed a motion to dismiss the complaint "herein on the grounds that the plaintiff has failed to state a justiciable issue upon which a claim for declaratory judgment or relief may be based." The government supported its motion with a brief in which it sought to show that the route of obtaining relief by declaratory judgment was inappropriate and that, in effect, the action of the parole board in the grant or denial of a parole was not reviewable by the courts under any circumstances.

2. It is to be noted that one of the functions of a caseworker is to prepare and present the inmates case to the Board of Parole for their consideration, along with any recommendations that he thinks appropriate.

Scarpa responded by filing a supplemental brief, reiterating his contention that he was entitled to "consideration" for parole under circumstances whereby the board would at least "consider" something more than his criminal record, which he alleges as a fact, had not occurred.

Without requiring a response on the fact issues raised by the complaint, the trial court entered a judgment sustaining the motion to dismiss, saying, "Though the court supports a full, fair hearing and consideration prior to parole decision, it cannot say *on the facts of this case* that petitioner was denied due process. A prisoner's prior criminal record is a legitimate item of consideration in determining whether one is to be released on parole [citing cases]. If, upon petitioner's record, the board determined that petitioner is not a suitable risk for parole, then this court will not interfere with the decision. To require the board to go through a time consuming, expensive investigation, after the board had received sufficient information to conclude that parole would not be appropriate at this time would be a futile exercise and would not enhance due process."

The court then stated: "Petitioner's erroneous perspective on this case apparently stems from his mistaken belief that the parole hearing constituted his entire parole consideration. Prior to the hearing reports are compiled. At the hearing the parole applicant is questioned. Subsequently the parole examiner considers the file, prepares a report, including a recommendation, and submits it to the Board of Parole, which takes final action in the case [citing 28 C.F.R. § 2.15]."

It must be noted that what the trial court stated to be facts applicable to this case are merely a recitation of what is *required* by the board's regulations. There is no affidavit, or even an answer by the government which sets out the facts which the trial court relied upon in making its judgment. Moreover, the trial court stated "the action taken by the Board was neither arbitrary nor an abuse of discretion and there has been no deprivation of constitutional rights merely because petitioner did not receive exactly the type of consideration he may have desired."

Thus, the trial court made a finding that the board's action was not arbitrary and was not an abuse of discretion, without having before it any answer to the specific contention that the investigation was based exclusively on reports of Scarpa's criminal activity, and that no consideration was given to other factors or other information, much of which is required by the board's regulations to be supplied by a person seeking parole.

■ We deal first with the form of proceeding by which the appellant sought to have his rights vindicated. In the case of Thompkins v. United States Board of Parole et al., 5th Cir., 427 F.2d 222, a prisoner sought an affirmative order in the district court requiring the Board of Parole to grant him a parole on the ground that either he was absolutely entitled to it, having served the one-third required period of his sentence, or that the United States Board of Parole should be required "to explain why he was not granted parole." The court there stated that although the complaining prisoner entitled his document "Application for Issuance of Writ of Mandamus" but was considered by the district court as a petition for habeas corpus, it "should properly have been considered as one seeking mandamus relief." The Court also, properly, stated that "failure to treat it as such did not prejudice appellant." We think, therefore, the fact that Scarpa called his action a suit for declaratory judgment, does not prevent this court from considering his contention on the merits.

In some ways there is a superficial resemblance between the *Thompkins* case and the one before us now. There, as indicated, Thompkins claimed that he was absolutely entitled to parole under

the circumstances, or in the alternative, he was entitled to an explanation as to why it was not granted him. In answering this contention, this court said, "Appellant does not allege an abuse of discretion or that the Board acted in an arbitrary or discriminatory manner." Thus, there immediately appears the distinguishing characteristics between *Thompkins* and *Scarpa*. Scarpa's entire complaint is based on an alleged abuse of discretion in the proceedings of the Board.

While it could be argued that the quoted language does imply that a different result would have been reached by this court if Thompkins had alleged "an abuse of discretion or that the Board acted in an arbitrary or discriminatory manner", we do not magnify this to the extent of using it as a precedent, in and of itself, for the proposition that Scarpa's complaint adequately alleged a claim which was not subject to being dismissed summarily under Rule 12(b) of the Federal Rules of Civil Procedure. We think, however, that the implication that can be drawn from this language is clearly in line with what has been held by other courts in matters dealing with what has heretofore been considered to be the almost unimpeachable conduct by the Board of Paroles in carrying out its functions.

Probably no better discussion of the Parole system can be found than that by the Court of Appeals for the District of Columbia Circuit in the case of Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 where in an en banc decision by the court an opinion was written by then Circuit Judge, now Chief Justice Burger, reviewing the parole system as it applied both to the opportunity for a prisoner to be granted parole while still incarcerated and the rights of a parolee when the authorities undertook to revoke a parole once afforded him. In discussing the manner in which a parolee gains his initial freedom as a result of an exercise of discretion by the Parole Board, the court says, "Each appli-

cant for parole is given a hearing before a member of the Board or an examiner, at the Federal Prison where he is incarcerated. If he is serving a term of more than one year he is entitled to appear at the hearing in person, Parole Board Directive No. 1, § 2.15, supra at 8489. The Hearing Officer is required to make a report of the interview under recommendation to the Board. In reaching its decision, the Board *considers the report, the recommendation of the Examiner and all information concerning the prisoner, gathered from recommendations, if any, of the sentencing judge, from the Federal Bureau of Investigation, prison and social agencies;* Parole Board Directive No. 1, § 2.14, supra at 8488 (emphasis added). On the basis of this information the Board is empowered to apply a broad congressional standard. The Board may grant parole when it is of the opinion 'there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws' and upon 'such terms and conditions . . . as the Board shall prescribe', 18 U.S.C. § 4203. Implicit in the term 'reasonable probability' is a recognition that the Board will err sometimes in granting conditional release with the result that the prisoner must be returned to custody to serve his unexpired term. The Board's discretion *to grant, deny or revoke* parole is broad. . . ." 318 F.2d 225, 234. (Emphasis added)

One significant feature of this discussion by the court indicates that the court considered the discretion of the Board to grant parole to be in pari materia with the Board's discretion to revoke. The number of cases in which courts have held that some elements of due process are required with respect to the *revoking* of parole is sufficiently large to permit a strong argument that at least something other than an absolute unbridled exercise of discretion by the Board can be required when the issue at stake is the right of a prisoner to have his request for parole "considered".

See, for instance, the case of Boddie v. Weakley, 4th Cir., 356 F.2d 242, in which, an opinion written by Chief Judge Haynsworth, the court said, with respect to a revocation proceeding, "It is quite true, as the District Court stated, that there is no right of judicial review of a Parole Board's exercise of its discretionary powers. It is also true that we have held that a District of Columbia prisoner is not entitled to the services of appointed counsel in a routine parole revocation hearing. Under § 24–206 of the D.C. Code, however, he has a statutory right to the assistance of retained counsel, *and there is a judicially enforceable right to fundamental fairness.* The right to fairness includes the right to present the testimony of voluntary witnesses. A colorable claim of deprivation of those rights is justiciable." 356 F.2d 242, 244. (Emphasis added).

The vice of the order here appealed from is that it was summary action based on a motion to dismiss. In Pred v. Board of Public Instruction of Dade County, Florida, 5 Cir., 415 F.2d 851, at 852, this court spoke of the "common refrain on the high mortality rate to a dismissal under F.R.Civ.P. 12(b) for failure to state a claim." The court also noted the particular problems presented in such a situation where new, possibly constitutional, questions were at issue. The court said, "To the usual perils should be added the unsoundness—both administratively and substantively—of trying, in the orbital atmosphere of this dynamic era, to resolve new, but serious, questions of constitutional law on barebones pleadings. Courts ought not to be pulled into academic exercises on a case that factually may never be. Byers v. Byers, 5 Cir., 1958, 254 F.2d 205. Courts ordinarily should grapple with these problems on a factual record. Public Affairs Associates, Inc. v. Rickover, 1962, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604."

This court has very recently dealt directly and plainly with the dismissal on a motion for summary judgment or a motion for judgment on the pleadings in a prisoner application. In the case of Campbell v. Beto, 5 Cir., 1972, 460 F.2d 765, this court said:

"At the outset it must be remembered that prisoner petitions, no less than any other complaint filed in Federal Court, may not be dismissed on the pleading, 'unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.' Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505, 506; Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Barber v. M/V 'Blue Cat,' 5 Cir., 1967, 372 F.2d 626; Cruz v. Beto, 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263. For purposes of considering a Rule 12(b) motion to dismiss the well pleaded allegations of the complaint must be accepted as true. Cruz v. Beto, supra; Holmes v. Silver Cross Hospital, N. D. Ill, 1972, 340 F.Supp. 125; Cooper v. Pate ,1964, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed. 2d 1030."

We have no doubt that the allegations in this complaint presented serious questions attacking the proceedings before the Parole Board for arbitrariness and lack of fairness, under the regulations issued by the Board itself. We think we ought not at this state of proceedings to attempt to decide to what extent the protections that have now been woven around the somewhat comparable situation in which a parolee is contesting a revocation proceeding ought properly to protect his interest when he comes up for "consideration" of parole by the Board of Paroles.

Nor do we think it necessary to decide whether the fact that this prisoner was sentenced under Subsections (a) (2) of Section 4208, places any especial gloss on his right to have early "consideration," or whether it merely permits the Board to consider his case at a time less

than the normal period of one-third of the sentence.

■ We think the order dismissing the case for failure to state a claim on which relief could be granted was error, for there is nothing but the government's brief to challenge the assertion by the appellant that he was denied elements of fundamental fairness—not because he was not given a parole, but because when the procedures were invoked his case was not treated with the consideration that was contemplated either by the statute or by the Board's regulations.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

GEWIN, Circuit Judge (dissenting):

With respectful regard for the views expressed by the majority I am unable to agree with the opinion, and therefore dissent. By equating "some elements of due process" which are required in the revocation of parole with proceedings by the Parole Board to determine whether parole should be granted to an incarcerated prisoner, the opinion opens a vast new area of federal litigation. This case illustrates the truth of the statement of Mr. Justice Douglas "that any principle once announced may in time gain a momentum not warranted by the exigencies of its creation." H. K. Porter Co. v. N. L. R. B., 397 U.S. 99, 110, 90 S.Ct. 821, 827, 25 L.Ed.2d 146, 155.

In the very beginning it should be noted that this is not a case in which the Board of Parole has failed to give consideration to appellant's eligibility for release on parole. He has not languished in prison without notice or attention by the Board. Indeed the Board has conducted two hearings and Scarpa has twice been considered for parole by the Board within three years after his sentence. See Scarpa v. U. S. Board of Parole, 5 Cir., 453 F.2d 891. He was convicted on June 13, 1968 and sentenced to eight years. He was granted a parole hearing on October 13, 1969. He was given a second hearing by the Board in June 1971. We originally dismissed the appeal as moot because appellant's diligent counsel agreed with the U. S. Attorney that the appellant was accorded full and fair consideration by the Board at the second hearing. Scarpa strenuously objected and this petition for rehearing was filed as a consequence.

The doctrine of finality in criminal cases is gasping for life and it may not survive. Under judge-made rules the criminal processes bog down, the courts are crowded with litigation and many criminal cases are never terminated. It is not now enough under the majority decision to have a police investigation, arrest, appearance before a federal magistrate, investigation and indictment by a duly constituted grand jury, arraignment, assurance of counsel, trial, direct appeal, and repeated re-examination by habeas corpus or motions for post-conviction relief. In addition to all of the foregoing procedures the majority concludes that courts should review the actions and conduct of the U. S. Board of Parole, and if I understand the decision, we are to disregard the expertise of the Board and review its actions as though it were a trial court. This is not a proper function of the courts. The routine granting or denial of parole should be left to the Board. Unless there are exceptional circumstances such as fraud, conduct beyond the authority granted by statute, or some other exceptional circumstances, the court should not interfere with the Board. To require the courts to review the action of the Board in denying parole on mere allegations that the Board did not accord the prisoner due process in its investigation and determination of the suitability of the inmate for release is an unwarranted intrusion by the courts into an area in which we are not authorized to act either by statute or by common sense.

*Courts are not qualified or authorized to act as super boards of parole, and they should not endeavor to do so. The*

district court gave adequate consideration to appellant's petition. A copy of that opinion is attached to this dissent as Appendix A. Since the district court rendered its opinion the appellant has been considered by the Board a second time as stated earlier.

The appellant contends that there was a lack of minimal standards of due process in hearings before the Parole Board as required by the due process clause of the Fifth Amendment. In his brief on petition for rehearing counsel for appellant contends that appellant is entitled to the following:

1. A hearing before an objective and impartial examiner;

2. adequate notice of that hearing;

3. an opportunity to confront and cross-examine adverse witnesses;

4. a right to retain counsel;

5. a determination stating reasons therefor and an indication of the evidence and rules relied upon.[1]

Yielding to the arguments of the appellant the majority has reversed the action of the district court because this court has concluded that under the allegations the Parole Board did not give appellant's case proper consideration. If the majority opinion becomes the law of this circuit, it is my prediction that in the future there will be cases claiming that the *examiner* was not impartial; that *notice* of the hearing was not sufficient; that the opportunity to *confront* and *cross-examine witnesses* was not sufficiently protected; *counsel* was ineffective; and that the *findings of fact* and *conclusions of law* were not supported by the evidence produced.

The apparent anxiety of judges to supervise and protect every phase of activity relating to criminal defendants both before and after conviction has given rise to numerous rules, "sub-rules, variations and exceptions which even the most alert and sophisticated lawyers and judges are taxed to follow." See Frazier v. United States, 136 U.S.App.D.C. 180, 419 F.2d 1161 (1969, Burger, dissenting opinion). The courts are becoming entrapped by their own eagerness and are assuming such unnecessary burdens by interfering with the duties of other governmental departments that they are unable to discharge the duties for which they were created.

The functions of the Parole Board are succinctly set forth in statutory language:

If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole.[2]

The majority opinion does not give proper consideration to the requirement of the statute that the prisoner should be released upon parole only if the Board concludes that he is eligible for release, will live by the law, and that "such release is not incompatible with the welfare of society."

---

1. Items 1 through 5 are taken from the petition for rehearing filed by appellant's counsel. The Government's brief is in substantial agreement with appellant's counsel as to the issues presented. The following is from the Government's brief on petition for rehearing:

Petitioner, in his petition for rehearing, has indicated four areas where the Parole Board has failed to comply with due process requirements: 1. By failure to allow the prisoner to be represented by counsel or a lay individual to act as counsel, 2. By failure to allow the prisoner an opportunity to question persons making unfavorable reports, 3. By failure to allow the prisoner access to hearing records, and 4. By failure to make written findings of fact and conclusions of law.

2. 18 U.S.C. § 4203.

In my view it is only fair to say that in addition to all other remedies now available to criminal defendants, including extensive and elaborate post-conviction proceedings, the majority has today created another category of review by requiring a hearing to determine whether a prisoner is entitled to relief under the declaratory judgment act. It is doubtful that the sponsors of the declaratory judgment remedy ever had any notion that it would be used as a post-conviction proceeding which would enable the courts to second guess the U. S. Board of Parole. That Board is composed of people who are trained and possessed of the expertise necessary to pass upon the release of prisoners. It is regrettable that the majority has laid the predicate which will require this court to supervise, review, and possibly reverse the action of the Board.

Parole is not a matter of right, it is a matter of legislative grace. Smith v. United States, 1963, 116 U.S.App.D.C. 404, 324 F.2d 436, cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975; Lathem v. United States, 259 F.2d 393 (5th Cir. 1958); Berry v. U. S. Parole Bd., 266 F.Supp. 667 (D.C.Pa.1967). Mere eligibility for parole does not entitle the prisoner to release. He must obey the rules of the institution. 18 U.S.C. § 4202. It is for the Board to determine that there is a reasonable probability that he will live and remain at liberty without violating the law, and that it is not incompatible with the welfare of society that he be released. 18 U.S.C.A. § 4203(a); Birch v. Anderson, 123 U.S. App.D.C. 153, 358 F.2d 520 (1965); Peterson v. Rivers, 121 U.S.App.D.C. 327, 350 F.2d 457 (1965); Losieau v. Hunter, 90 U.S.App.D.C. 85, 193 F.2d 41 (1951).

Probation is a function of the courts but parole operates upon different principles. The grant of parole, pardon or commutation of sentence, are in all essential respects wholly functions of the Executive Branch of the government. Tarlton v. Clark, 441 F.2d 384 (5th Cir. 1971); Thompkins v. U. S. Board of Parole, 427 F.2d 222 (5th Cir. 1970); United States v. Frederick, 405 F.2d 129 (3d Cir. 1968); Schawartzberg v. United States Board of Parole, 399 F.2d 297 (10th Cir. 1968);[3] Brest v. Ciccone, 371 F.2d 981 (8th Cir. 1967);[4] Cagle v. Harris, 349 F.2d 404 (8th Cir. 1965).

3. In Schawartzberg v. United States Board of Parole the appellant claimed the right to counsel at his parole hearing, but further claimed that his constitutional rights were violated when he was accused and interrogated concerning other issues at the parole hearing. The court concluded:

> The inquiries made at a parole hearing are for the purpose of determining whether the prisoner and society would benefit from minimal physical custody and not to impose additional punishment for other offenses. Under such circumstances we cannot conclude that such questioning violated any constitutionally protected right.

4. In Brest v. Ciccone the petitioner alleged the wrongful denial of parole by the U. S. Board of Parole because he alleged it acted upon untrue and prejudicial reports; that the Board was aware of the false statements it considered, was guilty of "malfeasance in office"; and that he was denied "equality of justice" inasmuch as other prisoners in like circumstances, including his co-defendant, had been paroled. He further alleged the use of inaccurate, false and erroneous progress reports. The petition was dismissed and in passing upon such dismissal the court succinctly stated:

> The District Court's denial of appellant's petition must be affirmed. By the language of 18 U.S.C.A. § 4203, the Board of Parole is given absolute discretion in matters of parole. The courts are without power to grant a parole or to judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations. Cagle v. Harris, 349 F.2d 404, 405 (8th Cir. 1965), cert. denied, 382 U.S. 965, 86 S.Ct. 455, 15 L.Ed.2d 369 (1965). Cf. Wright v. Settle, 293 F.2d 317, 319 (8th Cir. 1961).

By his petition appellant seeks a redetermination by the court by his eligibility for

## APPENDIX A

United States District Court
Northern District of Georgia
Atlanta Division

Robert J. Scarpa

Civil Action
No. 14249

versus

United States Board of Parole;
Walter Dunbar, Chairman, et al.

### ORDER

Petitioner, an inmate at the United States Penitentiary in Atlanta, is presently serving a sentence imposed pursuant to 18 U.S.C. § 4208(a) (2) by the United States District Court for the Eastern District of New York. Petitioner has filed exhaustive pro se pleadings seeking a declaratory judgment with respect to the constitutionality of the consideration petitioner received from the Parole Board at a parole eligibility hearing. Though originally filed in the United States District Court for the District of Columbia, the case has subsequently been transferred to this court.

Petitioner asserts federal jurisdiction in this case under the provisions of 28 U.S.C. §§ 2201, 2202. Since neither of these statutes confers jurisdiction on this court but rather specify a remedy available when jurisdiction is properly invoked, it is questionable whether this court has any jurisdiction to consider petitioner's claim. However, even assuming that jurisdiction is proper, petitioner is not entitled to the relief he seeks.

Petitioner repeatedly asserts that he does not question the discretionary nature of the Parole Board's authority to grant or deny parole. He does contend, however, that he is entitled to consideration for parole which complies with due process requirements. Petitioner's primary complaint centers around the Board's failure to investigate information which he submitted to it. Petitioner specifically objects to the failure to contact members of his family and his proposed employer and parole adviser. Petitioner further contends that the Board should have obtained his record from a New York state prison from which he had recently been released on parole and charges that the Board relied solely on his prior criminal record in denying parole. Upon the totality of these circumstances, petitioner claims he has been denied due process.[1]

Though the court supports a full, fair hearing and consideration prior to a parole decision, it cannot say on the facts of this case that petitioner was denied due process. A prisoner's prior criminal record is a legitimate item of consideration in determining whether one is to be released on parole. Riley v. Perini, 422 F.2d 397 (6th Cir. 1970); Jones v. Salisbury, 422 F.2d 1326 (6th Cir. 1970). If upon petitioner's record the Board determined that petitioner was not a suitable risk for parole, then this court will not interfere with the decision. To require the Board to go through a time-consuming, expensive investigation, after the Board had received sufficient information to conclude that parole would not be appropriate at this time would be a futile exercise and would not enhance due process.

Additionally, petitioner complains of (1) questions asked at the parole hearing, (2) the reports before the parole examiner, (3) statements by petitioner's caseworker with respect to parole, and (4) non-compliance with 18 U.S.C. §§ 4203, 4208(c). The Board's failure to comply with statutory requirements has not been shown by petitioner and there is nothing in his other allegations to indicate that he was prejudiced at his hearing. Petitioner's erroneous perspec-

parole. The courts have no jurisdiction and no power to so review or control the discretion of Parole in the exercise of its duties under § 4203.

1. Petitioner also claims his parole consideration constitutes cruel and unusual punishment. This allegation has no merit and needs no discussion.

tive on his case apparently stems from his mistaken belief that the parole hearing constituted his entire parole consideration. Prior to the hearing reports are compiled. At the hearing the parole applicant is questioned. Subsequently, the parole examiner considers the file, prepares a report, including a recommendation, and submits it to the Board of Parole, which takes final action in the case. 28 C.F.R. § 2.15.

It is well settled that matters relating to parole are vested solely in the Board of Parole, and the federal courts will intervene only in exceptional cases. This is not such a case. The action taken by the Board was neither arbitrary nor an abuse of discretion and there has been no deprivation of constitutional rights merely because petitioner did not receive exactly the type of consideration he may have desired.

It is therefore ordered that the relief requested in the petition be and the same is hereby denied.

This 17th day of February, 1971.

(Signed) NEWELL EDENFIELD

       Newell Edenfield

       United States District Judge

### ON COURT'S MOTION

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

It is ordered that this cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.