Robert J. SCARPA, Petitioner-
Appellant,

v.

U. S. BOARD OF PAROLE, Walter Dun-
bar, Chairman, et al., Respondents-
Appellees.

No. 71-1602.

United States Court of Appeals,
Fifth Circuit.

April 2, 1973.

Rehearing Denied May 25, 1973.

John R. Brown, Chief Judge, con-
curred and filed opinion.

Clark, Circuit Judge, concurred and
filed opinion in which Simpson, Circuit
Judge, concurred.

Tuttle, Circuit Judge, dissented
and filed opinion in which Wisdom,
Goldberg and Godbold, Circuit Judges,
joined.

Tuttle, Wisdom, and Goldberg, JJ.,
also dissented from the denial of the pe-
tition for rehearing.

Professor Donald Wilkes, Jr., University of Georgia School of Law, Athens, Ga., Professor Issac B. Covington, III, University of Georgia School of Law, Athens, Ga., for petitioner-appellant.

John W. Stokes, U. S. Atty., Richard H. Still, Jr., Asst. U. S. Atty., Atlanta, Ga., for respondents-appellees.

Before JOHN R. BROWN, Chief Judge, TUTTLE, Senior Circuit Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

After affording careful and respectful consideration to the views expressed in the majority panel's disposition of the instant case,[1] this court acting en banc reverses the decision of the panel. The district court's judgment dismissing appellant's complaint is therefore affirmed.

In view of the statement of facts contained in the majority and dissenting panel opinions it is necessary to set forth only brief facts in this opinion. On April 7, 1968, Scarpa entered a plea of guilty in the United States District Court for the Eastern District of New York to one count of a four count indictment, charging him with forging endorsements and uttering stolen United States Savings Bonds in violation of 18 U.S.C. § 495. The trial court imposed the maximum sentence of eight years, however, pursuant to 18 U.S.C. § 4208(a)(2),[2] the judgment provided that Scarpa would be eligible for parole at any time after his incarceration.[3]

At the time of his federal conviction, appellant was confined in a New York state prison serving a sentence for attempted robbery and attempted grand larceny.[4] Having completed his state sentence, Scarpa commenced serving his

---

1. See Scarpa v. United States Board of Parole et al., 468 F.2d 31 (5th Cir. 1972). On June 28, 1972, a majority of this court ordered this case to be reheard en banc Id. at 43.

2. 18 U.S.C. 4208(a)(2) provides:
 [T]he court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

3. Compare with 18 U.S.C. § 4202 which restricts the Board's authority to release only after one third of the sentence imposed has been served.

4. See, Brief for Appellant at 5 (filed May 27, 1971); Appellant's Amended Reargument of Appeal at Exhibit T (filed January 17, 1972); Appellee's Supplemental Brief at 2 (filed July 31, 1972).

sentence in the United States Penitentiary in Atlanta on July 8, 1969. Approximately three months later, on October 13, 1969, he received his initial hearing before a commissioner of the United States Board of Parole (hereinafter the Board). The Board, after considering the application, denied parole. He subsequently instituted the present action for declaratory relief.[5] He based his claim for relief on the internal procedures and practices of the Board which he asserted denied him due process of law. He further urged that the Board did not follow the applicable regulations which govern its internal procedures because it did not fully investigate all the information he submitted in his application for parole.[6]

The district court denied relief without a hearing. Recognizing the importance of "a full, fair hearing and consideration prior to a parole decision," the court concluded that Scarpa's complaint did not reveal such deprivations. Additionally, the court held that it was not improper for the Board to place controlling emphasis on Scarpa's previous criminal record in denying parole. Ultimately, the district court's judgment was reversed by a divided panel of this court.[7]

Assuming, as we must,[8] that the allegations in Scarpa's complaint are true, the precise issue presented by this appeal is whether he has stated a cause of action upon which a federal court may grant relief. A peripheral issue, and one which is necessarily intertwined with his factual allegations, is whether the ingredients of procedural due process sought by Scarpa are necessary to bring the Board's procedures within minimal constitutional standards. Before reviewing the precise issues of the instant appeal, we feel that a brief review of the applicable law in this area is helpful.

The Board is an independent statutory agency which is granted broad discretionary powers in parole eligibility determinations.[9] We have previously held that:

> By the language of Title 18 U.S.C.A. § 4203, the Board of Parole is given absolute discretion in matters of parole. The courts are without power to grant a parole or to determine judicially eligibility for parole. United States v. Frederick, 405 F.2d 129 (3d Cir. 1968). Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of the application for parole or to re-

---

5. Scarpa filed his complaint in the District Court for the District of Columbia, the situs of the Board. On September 29, 1970, the action was transferred to the United States District Court for the Northern District of Georgia, the locus of appellant's confinement. See, 28 U.S.C. § 1404(a) and Young v. United States Bureau of Prisons, 125 U.S.App.D.C. 105, 367 F.2d 331 (1966).

6. See 28 C.F.R. 2.12 et seq.

7. While Scarpa's appeal was pending, he received a *second* hearing before the Board in June, 1971. On the basis of representations by his counsel that he had been accorded a full and fair consideration at the *second* hearing, the appeal was dismissed for mootness. Scarpa v. United States Board of Parole et al., 453 F.2d 891 (5th Cir. 1971). Subsequently, Scarpa objected to the dismissal, and petitioned this court for a rehearing which was granted.

A *third* hearing by the Parole Board is scheduled for June 1973. Appellee's Supplemental Brief at 4 (filed July 31, 1972).

In the petition for rehearing, Scarpa raised a number of contentions not presented previously. Appellant asserted that he was entitled to: (a) a hearing before an objective and impartial examiner; (b) adequate notice of that hearing; (c) an opportunity to confront and cross-examine witnesses; (d) a right to retained counsel; and (e) written findings of fact and conclusions of law.

8. *See*, Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957); Hargrave v. McKinney, 413 F.2d 320, 324 (5th Cir. 1969).

9. *See*, 18 U.S.C. § 4203. The Board is composed of 8 members appointed by the President with the advice and consent of the Senate. 18 U.S.C. § 4201.

view the credibility of reports and information received by the Board in making its determination.[10] The decision whether to grant parole is a very complicated one.

■ Many factors are necessarily involved in such determinations. The Board's final determination may be based on any or all of the following: (1) length and seriousness of prior criminal record; (2) family history; (3) marital situation; (4) vocational and professional skills; (5) education; (6) physical condition; (7) living habits in a free community; (8) behavior and progress while incarcerated. The Board possesses the expertise and experience for ascertaining which factors are determinative from the unique situation presented by each applicant.

Scarpa alleges that the Board placed undue emphasis on his prior criminal convictions in denying him parole. Additionally he asserts that it did not investigate his marital situation or the job opportunities which would be available if granted parole.

■ Two underlying criteria guide the Board in its decision-making process. First, whether there is a reasonable possibility that the prospective parolee will remain at liberty without violating the law, and second, will such release be compatible with the welfare of society.[11]

■■ Parole is an integral part of the rehabilitative process for convicted felons. One's propensity for criminal conduct is surely a strong indicator in deciding whether parole should be granted.[12] The weight to be given Scarpa's criminal history is solely within the province of the Board's broad discretion in determining parole eligibility. It is not the function of the court to second-guess the outcome of such proceedings or what factors went into their formulation.[13]

■ We see no reason why the Board should be forced to make a full scale investigation of all the supportive facts used by the prisoner in applying for parole.[14] The Board operates under a tremendous work load.[15] For example in the instant case, even assuming that Scarpa had a stable family and guaranteed employment, it was not unreasonable for the Board to base their ultimate decision denying Scarpa's parole on his extensive past criminal record.

■ Scarpa's constitutional challenge is likewise without merit. The specific standards for procedural due process depend upon a "complexity of factors." [16] The standards of due process may expand or contract depending on the particular governmental activity involved. However, we discern a distinct and controlling difference between a Board eligibility hearing and the cases relied

---

10. Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir. 1971) cert. denied, 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); Accord, Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963); Richardson v. Rivers, 118 U.S.App.D.C. 333, 335 F.2d 996 (1964). "Claims that parole was wrongfully denied have been uniformly rejected by the courts. Even those courts that have insisted upon procedural safeguards on parole revocation, are reluctant to extend them to parole granting decision. Courts are even more reluctant to review the merits of such decisions." President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections 85 (1967).

11. 18 U.S.C. § 4203. Release by parole is merely a change in the nature of the government's custody of the convicted felon.

His actions are still closely supervised. The felon's right to liberty vel non is not therefore at issue in the parole eligibility decision. United States ex rel. Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (2d Cir. 1971).

12. *See*, Jones v. Salisbury, 422 F.2d 1326 (6th Cir. 1970); Riley v. Perini, 422 F.2d 397 (6th Cir. 1970). See also n. 7 *supra*.

13. *See*, Brest v. Ciccone, 371 F.2d 981, 982 (8th Cir. 1967).

14. *See*, Losieau v. Hunter, 90 U.S.App.D.C. 85, 193 F.2d 41 (1951).

15. The Board processes over 17,000 parole requests a year. Appellee's Supplemental Brief at 12 (filed July 31, 1972).

16. Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

upon by Scarpa to support his constitutional attack.

All of the authorities cited by Scarpa concern instances where the government seeks to take action which would presumptively deprive one of goods, rights, or privileges which *he already possesses*. Each case mandates a hearing *before* governmental action is initiated which might cause a deprivation.[17]

The emerging and underlying principle is clear; once a cognizable benefit is conferred or received, governmental action must not be employed to deprive or infringe upon that right without some form of prior hearing. We are unaware, however, of any authority for the proposition that the full panoply of due process protections attaches every time the government takes some action which confers a new status on the individual or denies a request for a different status.

Whether the Board grants parole is a clearly distinguishable exercise of discretion from revoking one's conditional freedom. The fifth amendment commands that the government shall not deprive one of his life, liberty or property without due process of law.

Scarpa is a convicted felon currently incarcerated in prison for his past transgressions. This manifest deprivation of liberty is the result of a due process hearing. The sentencing judge mandated a possible confinement of eight years. Scarpa now attempts to equate the *possibility* of conditional freedom with the *right* to conditional freedom. We find such logic unacceptable.[18]

If the Board refuses to grant parole, Scarpa has suffered no deprivations. He continues the sentence originally imposed by the court. He does not allege that the Board's actions were arbitrary, fraudulent, unlawful or without reason, but only that it did not fully investigate his case. We have previously discussed the weakness of this allegation.

The courts have repeatedly rejected Scarpa's contentions. These decisions are based on the realization that the granting of parole is not an adversary proceeding.[19] The Board's position in this regard was adequately stated in Hyser v. Reed,[20] by Judge (now Chief Justice) Burger:

> . . . At this stage the contact between prisoner and Board includes none of the incidents or procedural

17. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin of a debtor's goods) ; Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (revocation of parole) ; Goldberg v. Kelly, 397 U.S. 354, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits) ; Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (attachment of a worker's wages) ; Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (termination of employment).

18. *See,* Thompkins v. United States Board of Parole, 427 F.2d 222 (5th Cir. 1970) ; Cook v. Willingham, 389 F.2d 769 (10th Cir. 1968).

19. The Board does not function as an adversary of the felon. The Board has an interest in releasing those who qualify for parole. Judge Mansfield's explication of the Board's role and function is particularly instructive in this regard. He stated :

> The Board's function is a different one. It must make the broad determination of whether rehabilitation of the prisoner and the interests of society generally would best be served by permitting him to serve his sentence beyond the confines of prison walls rather than by being continued in physical confinement. In making that determination the Board is not restricted by rules of evidence or procedures developed for the purpose of determining legal or factual issues. It must consider many factors of a nonlegal nature, such as psychiatric reports with respect to the prisoner, his mental and moral attitudes, his vocational education and training, the manner in which he has used his recreation time, his physical and emotional health
> . . .

> Menechino v. Oswald, 430 F.2d 403, 407–408 (2d Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971).

20. 115 U.S.App.D.C. 254, 318 F.2d 225, 235 (1963), cert. denied sub nom. Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963).

safeguards which attend a criminal trial because the Board, at this stage, must evaluate the prisoner's record as a whole to determine whether he is a good risk for parole . . ..

Due process rights do not attach at such proceedings. In the absence of evidence of flagrant, unwarranted, or unauthorized action by the Board, it is not the function of the courts to review such proceedings.[21]

 In sum, we find that Scarpa's complaint construed liberally both in its factual allegations and constitutional assertions, to be without merit. The procedures adopted by the Board are not manifestly unfair but only evidence an intent to evoke a reasoned determination of whether to grant parole. It may be that Congress in its legislative wisdom will see fit to adopt the procedures here urged, but this we refuse to do by judicial fiat based on some theory of justification through constitutional compulsion. If legislation is adopted, the enactment will very likely set forth appropriate guidelines and standards of judicial review.

The judgment of the district court is affirmed.

JOHN R. BROWN, Chief Judge, concurring:

Although I had entertained a view requiring reversal, I now join in an affirmance largely on the basis of the factors emphasized in Judge Clark's concurrence. To it I would add that the whole complaint reflected that petitioner was demanding that within about three months of his arrival at the Federal prison, the parole authorities had to make all of the investigations and determinations which might, on Judge Tuttle's analysis, later be required. The complaint, read with the rosy *Conley* glasses, asserted that it was an abuse of administrative discretion not to set all these wheels then and there in motion.

I think, on the other hand, the District Court was entitled to say that any genuine realistic plan for rehabilitation of a prisoner, whose record included the character of convictions here, should require that the prisoner at least be around for some observation, study and evaluation by prison authorities. Indeed that is the objective behind a § 4208(a) (2) indeterminative sentence.

It is easy to say that some character of factual hearing must be had to determine whether these conclusory allegations are supportable. But to apply mechanically procedural rules appropriate to an ordinary damage suit to the situation of prisoner parole problems imperils the parole structure and its beneficent aims. With unrestricted access to the nearest Federal Court and the ease with which denial of broad constitutional claims can be asserted, the prison-parole authorities might have to answer almost daily the complaints of numberless prisoners dissatisfied with the progress or lack of progress with their current requests. Federal Courts must, of course, be open to prisoners. But unless access to a Court is to become an illusion from the judicial system being powerless to act from the sheer volume of such claims, we must be certain when importuned to interfere that the complaint realistically read shows arbitrary action constituting abuse of administrative discretion.

The complaint here fails to meet that test.

---

21. "Like an alien seeking entry into the United States . . . [the prisoner] does not qualify for procedural due process in seeking parole." Menechino v. Oswald, 430 F.2d 403, 408–409 (2d Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971) ; Walker v. Oswald, 449 F.2d 481 (2d Cir. 1971) ; Dorado v. Kerr, 454 F.2d 892 (9th Cir. 1972). Likewise, the courts have uniformly rejected the argument that counsel must be provided at parole eligibility hearings. Buchanan v. Clark, 446 F.2d 1379 (5th Cir. 1971), cert. denied sub. nom. Buchanan v. United States, 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971). Accord, Schawartzberg v. United States Board of Parole, 399 F.2d 297 (10th Cir. 1968).

CLARK, Circuit Judge, with whom SIMPSON, Circuit Judge, joins, concurring:

The en banc majority does not disagree with Judge Tuttle's dissenting observation that parole hearings provided to prisoners must comply with the regulations promulgated by the Board, nor does the majority disagree with the Conley v. Gibson principle that the petitioner's complaint, which stands unchallenged in this dismissal proceeding, governs the application of the law to this case. The difference between the two views is basically factual and to me reconciliation lies in what the whole complaint asserted. A reading of the extensive quotations from Scarpa's pleading which asserted the fact background of his case (see the original panel opinion in this case, 468 F.2d 31) makes it crystal clear that the Board had before it not just Scarpa's criminal record, but also a great deal of other information provided by Scarpa in his application for parole and by the Board's investigative forces. Without reservation, I concur in Judge Gewin's opinion for the en banc court.

TUTTLE, Circuit Judge, with whom WISDOM, GOLDBERG and GODBOLD, Circuit Judges, join, dissenting:

With deference, I dissent from the opinion and the judgment of the court. Also, with deference, I must say that I think the difference between the result reached by the majority and that which I believe to be correct arises from a failure of the majority opinion to meet the issues *actually raised* by Scarpa's complaint.

Since the opinion of the court recognizes, as, of course, it must, that the allegations of Scarpa's complaint are to be taken as true, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Hargrave v. McKinney (5th Cir.) 413 F.2d 320, it seems that there should be little difficulty in stating the issues simply by reading the petition in light of any legal principles that may touch on the rights of an applicant for parole.

I regret my inability, in spite of every effort to do so, clearly enough to state the issues in the original opinion written for the court. The result is that the present majority opinion contains several critical statements dealing with Scarpa's allegations which I think inadequately state his contentions.

(1) The first statement which I think inadequately states the true situation (especially because of Scarpa's primary contention that the Board acted *solely* on his record of convictions and did not consider his record while at Sing Sing) is the following: "Having *completed* his state sentence" (emphasis added). This may or may not be technically a correct statement, but it fails to state that he was *paroled* from his state sentence in New York.

(2) The second impression given by the language of the majority opinion which I think misses the principal basis of Scarpa's attack is the following: "He further urged that the Board did not follow the applicable regulations which govern its internal procedures because it did not *fully* investigate *all* the information he submitted in his application for parole" (emphasis added). Scarpa's whole case, on the other hand, was based on his contention that the Board did not investigate *any* of the information submitted by him *at all*. This is reiterated in his allegations that the Board "predicated their denial of parole with *nothing* before them except reports from various sources belonging to the Federal Government, *solely* pertaining to the criminal history of plaintiff".[1]

(3) The third statement that, with deference, it seems to me, misses the real point is this statement in the opinion: "The [trial] court held that it was not improper for the Board to place con-

---

1. The opinion is technically correct in saying that Scarpa criticized the Board for not investigating all of the items of information he supplied, but the court misses the point that the crux of his complaint is that it did not consider *any* of them.

trolling emphasis on Scarpa's previous criminal record in denying parole". What seems to me to be faulty about this statement is that it implies that the trial court was dealing with a record that disclosed a Board proceeding in which several factors (such as those mentioned in the majority opinion) [2] were considered by the Board and the Board then placed *"controlling"* emphasis on Scarpa's criminal record. To the contrary, according to the complaint, "the consideration afforded the plaintiff for possible release was predicated *solely* upon plaintiff's past criminal record" (emphasis in original).

(4) The fourth statement which I think indicates a failure of the court to come to grips with the real issue is the following: "Scarpa alleges that the Board placed undue emphasis on his prior criminal convictions in denying him parole". Of course, it is true that Scarpa, in different words, alleged that the Board placed undue emphasis on his prior criminal convictions, but the truth is he alleged a lot more—so much more, in fact, that it completely changes the entire issue. He alleges that the Board placed *exclusive, sole* reliance on his past criminal record—this is quite a different allegation from the one stated in the majority opinion, even though it can be said to be included within the language used by the majority opinion. I would, of course, agree that it is not the court's province to re-weigh the evidence or re-place the *emphasis*. The question is whether the Board can fail even to consider anything *except* the criminal record, and then deny the parole on that alone.

(5) Finally, in discussing Scarpa's constitutional arguments, the majority opinion says: "He does not allege that the Board's actions were arbitrary, fraudulent, unlawful or without reason, but only that it did not *fully* investigate his case" (emphasis added).

It is difficult to understand the statement that Scarpa did not allege that the Board's actions were "unlawful" when the short statement of fact at the beginning of the majority opinion says: "He based his claim for relief on the internal procedures and practices of the Board *which he asserted denied him due process of law*" (emphasis added). With deference, I would think that an allegation that he had been denied due process would fit within the definition of "unlawful" no matter how narrowly the majority of the court means to use that word. Moreover, while this pro se petitioner did not use the precise word "arbitrary" I would think that the clear statement that the Board failed to carry out its own prescribed procedures would be a sufficient allegation of "arbitrary" action.

Then, as to the concluding clause, "but only that it did not *fully* investigate his case," I have already pointed out how this is a clearly inadequate statement of Scarpa's contention. He says that the Board did not truly investigate his case *at all*, other than reviewing the criminal reports.

In sum, I think the issue posed by the majority is not the issue which Scarpa sought to raise at all. I think the issue is whether, when a defendant is given a maximum sentence coupled with the right to have consideration for parole at any time, all as provided under the indeterminate sentence procedures of 18 U.S.C.A. § 4208(a)(2), see footnote 2, majority opinion supra, and he is given a hearing before a parole examiner, the courts have any power to hear a complaint that he has been denied a hearing and will continue to be denied a hearing at which anything will be considered other than his past criminal record.

2. These are:
 (1) Length and seriousness of prior criminal records.
 (2) Family history.
 (3) Marital situation.
 (4) Vocational and professional skills.
 (5) Education.
 (6) Physical condition.
 (7) Living habits in a free community.
 (8) Behavior and progress while incarcerated.

What is most disturbing to me here is that the court affirms a dismissal of this case by a trial court on the bare bones pleadings. The Board filed no denial of the charge that it violated its own regulations in conducting the hearing. It did not deny the allegations that it considered *solely* the criminal reports. Yet the trial court in granting a motion to dismiss made a *factual* finding "though the court supports a full, fair hearing and consideration prior to parole decision [3] it cannot say *on the facts of this case* that petitioner was denied due process". The court then found facts that appear nowhere in the record. The court merely recited what the regulations require. See 28 C.F.R. § 2.15. What is required by the regulations *is precisely what Scarpa alleges did not occur* and there is no contradiction—except in the government's brief. Nevertheless, the trial court made a finding that they did occur.

There is nothing to be gained by repeating what was said in the original opinion, Scarpa v. United States Board of Parole et al., 468 F.2d 31, 5th Cir. (1972) as to the danger and cost of judicial time resulting from dismissal under F.R.Civ.P. 12(b), for failure to state a claim, especially where new and possibly constitutional questions are at issue. Byers v. Byers, 254 F.2d 205, 5th Cir. (1958), Public Affairs Associates, Inc. v. Richover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962).

The vice of the order appealed from is that it appears (and the majority now approves this result) to have laid down broad prohibitions to prisoner complaints about the fairness of a very important part of our system of criminal justice without a record by which the true facts have been developed. It is no answer to say that "the Board of Parole is given absolute discretion in matters of parole," Tarlton v. Clark, 441 F.2d 384, 385, 5th Cir. (1971). Of course, courts cannot reverse a denial of parole,

nor order parole granted, but I suggest that no member of this court would hesitate a second to join in court action invalidating either a regulation, by the Board or a proceeding by it if it were acknowledged that its action was a result of a policy or regulation to the effect that no consideration for parole would be given to any particular class of prisoners or to any person convicted of a particular crime. Such a course of action would be so obviously arbitrary and an abuse of discretion that it would be stopped in a moment. So much, then, for the "absolute discretion" proposition. In point of fact the majority opinion itself does not seem to me to stand on that basis. It stands rather on the proposition that what Scarpa says happened to him (although as I have pointed out above, I think the opinion does not adequately describe what Scarpa says happened) and what he says will continue to happen to him does not raise an issue of abuse of discretion or due process.

To the contrary, I think the petition alleges a clear case of abuse of discretion and failure to follow the regulations of the Board itself such as to require that further proceedings be pursued in order to resolve the truth or falsity of Scarpa's complaint. Moreover, I think the recent thrust of Supreme Court opinions may well indicate that arbitrary and unfair procedures of the Parole Board are subject to court review because of want of due process. See in this connection Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) where the Court in a *revocation* of parole case said that "parole has become an integral part of the penological system." The Court also said: "society has a further interest in treating the parolee with a basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." 408 U.S. 471, 484, 92 S.Ct. 2593, 2602. Is not the

---

3. Presumably the court meant it would take jurisdiction if the hearing did not measure up to its idea of what is a "full, fair hearing".

same reasoning applicable to the manner in which parole applications are to be treated? Cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

The distinction drawn by the majority between a hearing to revoke parole and a hearing to grant parole is, of course, a valid one. However, the fact that there is a distinction is still a far cry from saying that while a revocation hearing is subject to due process requirements Morrissey v. Brewer, *supra*, a parole hearing itself can be conducted in absolute disregard of all due process requirements. The Court in Morrissey said:

> "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 [71 S.Ct. 624, 646, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), quoted in Goldberg v. Kelly, 397 U.S. 254, 263 [90 S.Ct. 1011, 1018, 25 L.Ed.2d 287] (1970). The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972). Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895 [89 S.Ct. 1820, 23 L.Ed.2d 349] (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." 408 U.S. 471, 481, 92 S.Ct. 2593, 2600.

The facts have not been developed in this case. I am convinced that if they are as alleged by Scarpa, then he is entitled to relief. As was stated in the original opinion in the case, I think it inappropriate to attempt to prescribe precisely what relief might be available to him until all of the facts are known. At the very least it seems to me the government should be required to admit or deny the factual allegations in Scarpa's complaint. Further proceedings would then depend upon the issues drawn.

I think the judgment of the trial court should be reversed, as stated in the original opinion and the case remanded for further proceedings as here outlined.

## ON PETITION FOR REHEARING

Before BROWN, Chief Judge, TUTTLE, Senior Circuit Judge, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

PER CURIAM: IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby DENIED.

TUTTLE, Circuit Judge, with whom WISDOM and GOLDBERG, Circuit Judges, join, dissenting:

With deference, I dissent from the denial of the petition for re-hearing for the grounds heretofore stated in my dissenting opinion.