James E. WILLIAMS and Junior Theobald, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

MISSOURI BOARD OF PROBATION AND PAROLE et al., Defendants.

No. 74CV125–W–2.

United States District Court, W. D. Missouri, W. D.

Jan. 17, 1978.

Ronald L. Rosemann and Michael Thompson, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for plaintiffs.

Paul Robert Otto and J. Paul Allred, Jr., Asst. Attys. Gen., Jefferson City, Mo., for defendants.

## MEMORANDUM OPINION AND JUDGMENT

COLLINSON, District Judge.

The plaintiffs in this action are prisoners incarcerated in the Missouri State Penitentiary, Jefferson City, Missouri, who were eligible for parole but were denied release. They filed a pro se Complaint challenging the Constitutionality of the procedures of the Missouri Board of Probation and Parole. They name the Missouri State Parole Board and its three members [1] as defendants. By this action, brought under the provisions of 42 U.S.C. § 1983 (1970), plaintiffs, on their behalf and on behalf of a class of inmates eligible for parole, seek injunctive and declaratory relief. Three months after the Complaint was filed, counsel from the Legal Aid and Defender Society of Greater Kansas City entered his appearance on behalf of plaintiffs and attorneys from that organization have represented plaintiffs since that time.

By order entered in July, 1975, the class plaintiffs sought to represent, all inmates incarcerated in penal institutions of the State of Missouri who are presently or in the future will be subject to the jurisdiction of the Missouri Board of Probation and Parole and who are being or will be brought before that Board for a parole release hearing, was certified.

Plaintiffs initially challenged the Parole Board procedures under both the Equal Protection Clause and the Due Process Clause of the United States Constitution, but plaintiffs abandoned their Equal Protection claims as demonstrated by the stipulation filed by the parties prior to the trial in this cause. That stipulation states the primary issue as whether "the due process requirements of the Fourteenth Amendment to the Constitution of the United States appertain in the parole release decisional process." The prisoners contend that the Due Process Clause entitles them to the following protections relating to parole eligibility determinations:

(1) Establishment and publication of factors, beyond the statement in the Board's Rules and Regulations, which the Board considers important in their decisional process and the criteria used by the Board in weighing the factors;

(2) Access to the factual data which the Board considers in determining whether to grant or deny parole with the opportunity to supplement, contradict or correct that data in writing prior to a parole decision and adequate notice of the existence of factual information upon which an adverse decision might be based;

(3) Representation by counsel or an advocate at the parole hearing;

(4) An opportunity at the parole hearing to be present when witnesses testify in their behalf; to cross-examine adverse witnesses who testify against them and to examine and rebut ad-

---

1. W. Sartorious was originally named as a defendant in his capacity as a member of the Board; however, he left that position and un-der the provisions of Rule 21, Fed.R.Civ.P., Dick Moore, who replaced Sartorious on the Board, was substituted.

verse information contained in their files; and

(5) A written statement of reasons, more specific than those currently given, for denial of parole and/or a written summarization of the factual basis for the Board's decision and the criteria and reasoning employed in the determination.

After the trial in this cause the Parole Board adopted new rules and regulations which provide: that an inmate may have one person attend the hearing with him; for written reasons for parole denial or set back; and for an administrative appeal process. Defendants have filed a post-trial motion based upon these new procedures by which they seek the dismissal on the grounds of mootness of the issues relating to the new procedures. Plaintiffs filed a "Motion in Opposition" to this motion in which they state that they "agree that only the narrowly circumscribed issue of counsel at the parole hearing is now moot, but the major thrust of plaintiffs' argument that the present procedure and factual information upon which an adverse decision might be made still lies at the heart of the case at Bar." For reasons discussed below the Court need not address defendant's motion.

Plaintiffs make no claim that they are entitled to immediate release or that they have a right to be granted parole. Their claims instead are a straightforward attack on the Constitutionality of the procedures of the State Parole Board and specifically on the denial of procedural Due Process protections in the course of parole eligibility determinations.

The parties have stipulated to the structure of the Board and the procedures it employs in making those decisions. Their stipulation includes the following facts. The Missouri Board of Probation and Parole was created pursuant to RSMo. § 549.205 (1969). The Board has ultimate responsibility for the granting and denying of parole to prisoners in all state penal institutions in Missouri. In addition, the members of the Board supervise the probation and parole staff which is responsible for supervising parolees and probationers and compiling presentence reports at the request of sentencing judges. The Board consists of three members appointed by the Director of the Department of Social Services with approval of the Governor and with the advice and consent of the Senate. The members of the Board are currently W. R. Vermillion, Chairman, Ferd Sturm, and Dick D. Moore. The Board employs two parole analysts who participate in the decision to decide whether inmates should be granted parole and who write the statement of reasons on behalf of the Board which informs an inmate why he has been refused parole. The analysts have no administrative responsibilities. The Board employs fifteen institutional parole officers who are stationed in each of the institutions under the supervision of the Division of Corrections. One of the functions of each institutional parole officer is to evaluate inmates prior to parole hearings and reviews and prepare a written report summarizing all data known about the inmate and evaluating his chances of success on parole, including a recommendation as to whether parole should be granted. At the time of the stipulation in July, 1976, each institutional parole officer was responsible for interviewing and evaluating approximately 450 inmates each year. Other duties include the performance of counseling functions, answering correspondence pertaining to inmates, serving as a member of the classification team for the inmates in their case load.

RSMo. § 549.261 (1969) provides that prisoners in the Missouri Division of Corrections shall be released on parole when, in the opinion of the Board, there is reasonable probability that the prisoner can be released without detriment to the community or to himself. Under the provisions of RSMo. § 549.261 an inmate shall be eligible to make application for parole and shall be given a hearing when he has served one-third of his sentence or twelve months, whichever is less, in an orderly and peaceful manner without having any infraction of the rules or laws of the institution reported against him. Any inmate who has served two-thirds of his time or two years, which-

ever is less, shall be eligible to make application for parole and shall be given a hearing. Paroles may be granted, however, before the minimum period specified has been served. That same section further provides that parole is to be ordered only in the best interest of society and not as an award of clemency; it is not to be considered a reduction of sentence or pardon. A prisoner shall be placed on parole only when the Board believes that he is able and willing to fulfill the obligations of the law abiding citizen. Every person while on parole remains in the legal custody of the institution from which he was released, but is subject to the orders of the Board.

The rules and policies governing the parole decision making process are contained in the statutes discussed above and in the rules and regulations of the Board set out in the booklet published by the Parole Board entitled "Rules and Regulations Governing the Granting of Paroles and Related Procedures" as modified in January, 1977. An inmate's first parole hearing generally will be scheduled according to a chart printed in the booklet; however, any inmate so requesting may have a parole hearing at the end of his first year at the institution even if the chart would indicate it should be after a longer period. Within thirty days of an inmate's assignment within the Division of Corrections, the inmate is notified by letter of the month of his first parole hearing. Within forty-five days of the first and of any subsequent hearings, the inmate is notified by letter of the exact day of the hearing.[2]

Parole hearings are conducted by a panel of three persons comprised of the two parole analysts and one member of the parole board. Following the initial hearing, parole may be granted, denied or the case may be "setback." The term "setback" is used to describe the setting of a case for another hearing or review at a subsequent time. When the Board issues a setback and assigns the inmate to a review at a later date,

the inmate is notified of the month and the year during which the review is to take place. This notification is made in writing on the same sheet that contains the written statement of the reasons for the setback.[3] A parole review differs from a parole hearing in that the inmate does not appear before the Board personally but information contained in his parole file, including a prereview report prepared by an institutional parole officer, is reviewed by a panel and a decision may be made to grant or deny parole or give a further setback.

All inmates are provided a copy of the rules and regulations booklet which contains a list of the matters considered by the Board in their determination of whether an inmate should be paroled. The rules and regulations of the Board and RSMo. § 549.-261 (1969) contain the only written criteria for the granting of parole and no additional policies or standards have been promulgated by the Board.

The Board maintains a parole file for each inmate eligible for parole. That file generally contains the following:

(a) The classification report prepared for the inmate by the Division of Corrections when he entered the institution;

(b) Presentence report;

(c) Psychiatric reports, if available;

(d) Psychological reports, if available;

(e) Prereview and progress reports;

(f) Information concerning any previous periods spent on parole or probation while under the supervision of the Board;

(g) Prison disciplinary reports;

(h) Material on previous time spent in the custody of the Division of Corrections;

(i) A list of previous arrests;

(j) References to juvenile proceedings; and

(k) Older files contain work reports from prison work supervisors.

---

**2.** Although these facts as to notice were not stipulated to prior to the trial, testimony given at the trial establishes that this is the procedure that is generally followed.

**3.** These facts also were not stipulated to, but were established at the trial.

Other information which may be contained in parole files includes any comments or information submitted by law enforcement officials, the sentencing judge and by anyone else who may wish to send their comments or other material to the Board, including unsolicited comments from individuals who wish to protest or support an individual application for parole. The Board has in fact received and does examine such materials. As a matter of Board policy, inmates are not advised of the existence of adverse materials in the files submitted by judges, prosecutors, law enforcement personnel or other persons. No formal procedure by which an inmate can determine the existence of adverse allegations or factual statements in his parole file is available, but members of the hearing panel may discuss particular items with the inmate at a hearing. As a matter of Board policy, inmates and their counsel are not permitted to inspect their parole files. The official and community attitude reports in the files are prepared by the field offices of the Board, in those cases in which they are requested by the Board, and contain summarized interviews with police officers, judges, prosecutors, victims and citizens in the community from which the inmate was sentenced or in which the offense was committed. Official and community attitude reports are one of the factors considered in deciding the location to which an inmate should be paroled. The reports of psychologists and psychiatrists are utilized by members of the Board and parole analysts in making decisions whether to grant or deny parole; however, in line with Board policy, these reports are not available for inspection by either inmates or their counsel.

After reviewing the parole file and interviewing the inmates, institutional parole officers prepare "progress reports" prior to scheduled parole hearings and "prereview reports" prior to scheduled reviews. At the interview, the institutional parole officer will ask the inmate, among other things, about his prior record, his past behavior both in and outside of the institution, and his plans should he be released on parole.[4]

Progress and prereview reports generally contain a summary of the inmate's criminal history including references to juvenile offenses, a summary of his social history, a description of his progress in the institution, a description of any disciplinary offense and views of correctional officers about the inmate, a description of his attitude at the time of the report, a description of programs within the institution in which he is involved and his progress in those programs, a description of the inmate's release plan, a summary of the contents of the psychological and psychiatric reports if available, a summary of the official and community attitude report if available, an evaluation of the inmate by the institutional parole officer, and a recommendation as to whether parole should be granted. Institutional parole officers evaluate an inmate's assets and liabilities in prereview and progress reports. In arriving at his recommendation concerning release on parole, each institutional parole officer exercises his individual judgment in the weight to be given the various factors examined under the circumstances of each case. The release plan is a detailed plan of what the inmate would do if he were released, including housing and job arrangements. The release plan is evaluated by the field office in the particular community to which the inmate plans to relocate. Release plans are prepared by the inmate with the assistance and cooperation of institutional parole officers. The purpose of the prereview and progress reports is to summarize the information already contained in the parole file so that a complete reading of the file is ordinarily unnecessary by the members of the hearing and review panels before making their decisions and to offer the institutional parole officer an opportunity to make his evaluation and suggestions regarding parole. In progress and prereview reports institutional parole officers may evaluate, among other

---

4. The nature of these interviews are not part of the facts stipulated to prior to trial, but was testified to at the trial.

factors, the inmate's self-control, his self image, his feeling of remorse for the crime for which he was convicted as that feeling bears on the degree of insight which the inmate has into his situation, the inmate's institutional adjustment, the inmate's ability to handle stressful situations, the inmate's disciplinary reports insofar as they bear on his ability to handle stressful situations, and the inmate's pattern of behavior. In determining the latter factor, the parole officer may include in his evaluation the inmate's prior offenses, juvenile offenses, and his institutional record. The institutional parole officer's sources of information for his report will include, but not necessarily be limited to, the contents of the parole file, discussion about the inmate with guards, job supervisors, teachers, and other members of the Division of Correction's staff, and the interview with the inmate. Views of the Division of Correction's staff will sometimes be included in the report. The institutional parole officers do not have the time nor the resources to make independent investigations to verify all the information they receive from sources inside and outside the institution. Progress and prereview reports prepared by the Institutional Parole officers are utilized to a significant degree by the members of the Board and parole analysts in the decision-making process because they believe that the officer's close proximity to the inmate and daily contact with the institutional staff gives them the proper perspective from which to view various aspects of each inmate's character. Normally all information which the institutional parole officer wishes to communicate to the Board will be contained in his report and the officer usually does not have personal contact with the members of the Board or parole analysts with regard to specific cases, although such contact is possible.

At the hearing, one of the three individuals making up the panel assumes primary responsibility for interviewing each inmate. That panel member has in his possession the case file for the inmate appearing for parole determination. The other two members of the panel are furnished copies of the presentence report, the classification report, and the latest progress report prior to the hearing. Generally these two will not examine the parole file itself. In the process of the hearing, the panel members question the inmate and discuss with him subjects including, but not necessarily limited to, his present offense, prior offenses, his record of arrests, his institutional activity and his proposed release plan. The parole applicant may correct facts disclosed to him by the institutional parole officer at the interview or by the hearing panel at the hearing by means of his own oral presentation or by written means or by the presentation of witness who may meet with the Board either immediately after the hearing or in the Board's central offices in Jefferson City, Missouri. Witnesses, including an attorney, may also have an interview with the Board at its central offices prior to a Board review.[5] Witnesses may appear and testify before the Board on an inmate's behalf, but the inmate is not allowed to be present when the testimony is taken and should a witness testify against the inmate at the hearing, it is Board policy not to allow the inmate to be present.

On the average, each inmate spends twenty minutes before the hearing panel. Following this hearing or a review, the panel members indicate their decisions on a Board Hearing and Action Sheet. This form contains thirteen reasons, the most common reasons given, for denial of parole or setback. However, additional reasons may be indicated in writing on the sheet. The decision as to whether or not to deny parole is normally made after the conclusion of the hearing and after the panel members have discussed their decisions. Occasionally, the panel will defer decision until information on parole release plans or psychiatric evaluation which have been requested become available. By statute, at least two Board members must concur in any decision granting parole; therefore, if

---

5. The facts relating to applicants' opportunities to correct factual data and have witnesses appear before the board were not stipulated to, but were established by testimony at the trial.

the hearing panel votes to grant parole, another Board member must agree to that decision.

If parole is denied or a setback is given, the inmate is given written reasons for that action which are prepared by a parole analyst. The analysts draft the reasons to be given the inmate after the hearings are completed. Ordinarily, there is no additional consultation with the other panel members as to the reasons. The written reasons always suggest that the inmate contact his institutional parole officer about additional information concerning the reasons. The institutional parole officer is the individual who gives the written reasons to the inmate and who is immediately available for counseling in reference to the Board's decision. His understanding of why parole was denied or a setback given is based on the statement of reasons prepared by the analyst, comments contained on the Board Hearing and Action Sheet, and his own report to the Board. If an inmate requests information concerning a decision from an institutional parole officer which the officer does not have, he may refer the inmate to the Board or to the parole analysts. The same procedure relating to written statement of reasons is followed after a setback or a denial after a review.

At the time of the stipulation, approximately 140 hearings and 105 reviews were conducted each month.

At the trial, plaintiffs offered into evidence certain exhibits, some sixteen documents taken from parole files plus three complete files, to which defendants objected. With leave of Court, defendants entered specific objections to these exhibits in a post-trial written memorandum. Defendants object to thirteen of these exhibits as being irrelevant since the type of information included in an inmate's parole file was stipulated to by the parties prior to the trial. Furthermore, defendants state that the three parole files offered are files of three inmates who were either released or paroled prior to the trial and their files contain documents predating September, 1974, when the Board initiated new procedures relating to parole release proceedings. They therefore contend that all these offered exhibits are inadmissible.

Plaintiffs take the position that these exhibits are illustrative of the nature of the interest inmates have in gaining access to their files prior to parole decisions so that they can adequately correct or rebut factual allegations or are illustrative of the sorts of reasons given for parole denial. Plaintiffs contend that these exhibits, as a demonstration of the substance of the files themselves rather than their form, are relevant to the balancing of competing interests involved in the determination of the Constitutional question of how much process is due. The Court at this time, based on plaintiffs' arguments, overrules defendants' objection to the admission into evidence of these exhibits and plaintiffs' Exhibits Number 1, 3, 5 through 9, and 11 through 19 will be admitted into evidence.

█ The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." The application of this clause to parole eligibility proceedings involves two questions: first, is a prisoner's interest in parole protected by the Fourteenth Amendment; and second, if it is, what specific procedures are required to assure due process of law.

The Circuits are split with respect to the first question.[6] And the Supreme Court

6. United States Circuit Courts of Appeal holding that Due Process *is* applicable are: *United States ex rel. Johnson v. Chairman*, 500 F.2d 925 (2d Cir. 1974), *vacated as moot sub nom. Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); *Haymes v. Regan*, 525 F.2d 540 (2d Cir. 1975); *Bradford v. Weinstein*, 519 F.2d 728 (4th Cir. 1974), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Franklin v. Shields*, 569 F.2d 784 (4th Cir. decided September 19, 1977); *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975), *cert. denied* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1973); and *Childs v. United States Board of Parole*, 167 U.S.App. D.C. 268, 511 F.2d 1270 (1974). Those Circuit courts holding to the contrary are: *Scarpa v. United States Board of Parole*, 477 F.2d 278 (5th Cir. 1973), *judgment vacated and remanded for a determination of mootness*, 414 U.S.

has yet to decide whether Due Process extends to parole release hearings, although cases raising the question have recently reached that Court.[7]

■ The initial question is whether plaintiffs assert an interest within the framework of the Fourteenth Amendment's protection of "liberty" and "property." *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). An identification of plaintiffs' interest is the first step in the process. Their interest is the present "right" to be considered for parole, a "right" created by Missouri statute.[8] This state created interest can be characterized as a privilege or a matter of grace. However, that characterization is no longer determinative of whether due process is applicable. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 4, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

■ It goes without saying that this interest is one to which parole applicants attach great importance. The denial of parole after a Board determination constitutes a grievous loss since the applicant must remain within the confines of the penal institution rather than being released albeit on conditional terms. However, not every grievous loss invokes the procedural protections of the Due Process Clause. "To determine whether due process requirements apply . . . we look not to the 'weight' but to the *nature* of the interest at stake." *Board of Regents v. Roth, supra,* 408 U.S. at 570–571, 92 S.Ct. at 2706; *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

The *nature* of plaintiffs' interest is one of a decision-making process complete with the trappings of analysis by the Parole Board of the applicant's past and anticipated future behavior as prescribed by Missouri statute.[9] The ultimate determination of the Board is founded upon informed decision making—a prognostic determination of the suitability of an applicant's release. This prognostication may be based on factors such as: "(1) length and seriousness of prior criminal record; (2) family history; (3) marital situation; (4) vocational and professional skills; (5) education; (6) physical condition; (7) living habits in a free community; (8) behavior and progress while incarcerated." *Scarpa v. U. S. Board of Parole, supra* at 281. The determination based on this complex of factors has roots which lie in such fields as psychology, sociology, criminology and penology.

The decision making process involved in parole eligibility is not one of the determination of establishable facts or provable acts as in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), where prison disciplinary proceedings at which statutorily created good time credits could be forfeited only for serious misbehavior, see *Meachum v. Fano, supra,* 427 U.S. at 226, 96 S.Ct. 2532, or as in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), where the Supreme Court held that Due Process does apply to parole revocation decisions since a determination must be made on whether conditions

809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), *dismissed as moot,* 501 F.2d 992 (5 Cir. 1973); *Brown v. Lundgren,* 528 F.2d 1050 (5th Cir. 1976), *cert. denied* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976); *Dorado v. Kerr,* 454 F.2d 892 (9th Cir. 1972), *cert. denied* 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed. 188 (1972); *Mosley v. Ashby,* 459 F.2d 477 (3d Cir. 1972); *Madden v. New Jersey State Parole Board,* 438 F.2d 1189 (3d Cir. 1971); and *Scott v. Kentucky Board of Parole,* (6th Cir. unreported), *remanded for determination of mootness,* 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976).

7. *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) was vacated as moot. *See* Justice Steven's dissenting opinion

in *Scott v. Kentucky Parole Board,* 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976), which was remanded for consideration of the question of mootness.

8. See discussion above of RSMo. § 549.261 (1969).

9. RSMo. § 549.261(1) (1969) provides: "When in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board shall release on parole any person confined in any correctional institution administered by state authorities. All paroles shall issue upon order of the board, duly adopted."

of parole have, in fact, been violated. The Supreme Court hinted that they recognize a distinction between parole eligibility and parole revocation determinations in footnote 8 at page 482, 92 S.Ct. at page 2601 of the *Morrissey* opinion where they quote from the Second Circuit Court of Appeals:

> "It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." *United States ex rel. Bey v. Connecticut Board of Parole*, 443 F.2d 1079, 1086 (1971).

■ Because the nature of the decision of the Parole Board is predictive and discretionary, based on individual determinations in the case of each applicant, plaintiffs have no more than an expectancy of conditional release, a possibility of parole. In a recent Eighth Circuit opinion, the Court of Appeals, citing *Scarpa v. U. S. Board of Parole, supra* at 282, and *Barradale v. United States Bd. of Paroles & Pardons*, 362 F.Supp. 338, 340 (M.D.Pa.1973), held that a Minnesota prisoner's 42 U.S.C. § 1983 claims for monetary damages based on the state parole board's miscalculation of his target release date could not stand based in part on the finding that "[i]f a parole board refuses to grant parole, the inmate has suffered no deprivation." *Kelsey v. State of Minnesota*, 565 F.2d 503, 506, n.3, decided November 8, 1977.

In short, the nature of the interest involved identifies the interest as one which is ephemeral, a subjective expectancy. This possibility of parole is not the type of interest which brings into play the procedural protections of the Due Process Clause.

■ *Kelsey* establishes that an inmate may prevail in a suit seeking reconsideration of parole, or an attack on the parole board's manner of decision making only if the board's action was "flagrant, unwarranted and unauthorized." *Scarpa v. U. S. Board of Parole*, 477 F.2d 278, 283 (5th Cir.) (en banc), *vacated and remanded to consider mootness*, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), or if the board failed to substantially comply with the guidelines it has established for itself. *Masiello v. Norton*, 364 F.Supp. 1133 (D.Conn.1973). *See also Scott v. Kentucky Parole Board*, 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976); *Burton v. Ciccone*, 484 F.2d 1322 (8th Cir. 1973).

*Kelsey, supra* at 506.[10]

■ There is no evidence in this case that the Board's action was "flagrant, unwarranted, or unauthorized" or that it failed to comply with its own guidelines. And in fact, a large part of the evidence presented by plaintiffs related to the parole determination system now in operation in the State of Minnesota.

Plaintiffs' interest is that of the possibility of conditional release on parole, such a release to be ordered after a determination which is predictive in nature. The procedural protections of the Fourteenth Amendment of the United States Constitution do not adhere to this interest and are not mandated by that Amendment in relation to proceedings of the Missouri State Board of Probation and Parole in its determination of whether or not an inmate in the Missouri Division of Corrections should be paroled. Furthermore, there has been no evidence that plaintiffs have been denied parole in an unwarranted, unauthorized or flagrant manner. Therefore, the injunctive and declaratory relief plaintiffs seek will be denied and judgment will be entered in favor of defendants.

For the foregoing reasons, it is

ORDERED that the injunctive and declaratory relief sought by plaintiffs be, and

**10.** Although *Scarpa* has been dismissed as moot, 501 F.2d 992 (1973), the Fifth Circuit has substantially readopted the reasoning of that case in *Brown v. Lundgren*, 528 F.2d 1050 (1976). *Scott* was not decided by the Supreme Court but was remanded for a determination of mootness. The *Kelsey* court's reference to that case is to the dissenting opinion of Justice Stevens which discusses reasons why the issue of Due Process application of parole eligibility determinations should have been decided in that case.

the same hereby is, denied; and the Clerk of Court is hereby directed to enter judgment in favor of defendants.